743 A.2d 814

**William Dunlock BRYANT**

v.

**STATE of Maryland.**

**No. 5621, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 7, 2000.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted before HOLLANDER, THIEME and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

THIEME, Judge.

Appellant William Bryant was convicted by a jury in the Circuit Court for Baltimore County of homicide by motor vehicle while under the influence of alcohol, driving under the influence of alcohol, negligent driving, driving at unreasonable

speed and failure to control speed.[1]  The court sentenced appellant to one year imprisonment and a $1,000.00 fine for homicide by motor vehicle while under the influence of alcohol, and merged the lesser included offenses for sentencing purposes.  Appellant appeals from his convictions and presents the following questions, which we have slightly rephrased, for our review:

1. Did the trial court err in admitting the results of a toxicology report into evidence as a business record?

2. Did the trial court give an erroneous jury instruction on the crime of homicide by motor vehicle while under the influence of alcohol?

We answer "yes" to question 1 and do not reach question 2.

### Facts

At approximately 1:30 a.m. on August 12, 1994,[2] appellant was driving a Chrysler Conquest northbound on Interstate 95 in the White Marsh area.  Gertrude O'Boyle was the sole passenger in the vehicle.  The Conquest passed a vehicle in front of it, in which Brian Shillman and Mark Williams were traveling, and then returned to the lane in front of Shillman and Williams.  Shillman estimated that the Conquest was traveling between 70 and 75 miles per hour.  Williams estimated that the Conquest's speed was between 75 and 80 miles per hour.  Shillman described what happened after the Conquest passed their vehicle:

> We were behind [the Conquest] maybe for a good half mile, three quarters of a mile. . . .  Then we just saw tail lights go towards the center wall, a bunch of small car parts and debris kind of flying everywhere.

---

**1.**  Appellant was found not guilty of automobile manslaughter, homicide by motor vehicle while intoxicated, driving while intoxicated, reckless driving, and making an unsafe lane change.

**2.**  The discussions at the sentencing proceeding indicate that after appellant was released from the hospital, he left the State of Maryland and was not located until 1997.

Williams, who was driving, stopped his vehicle. Shillman and Williams then approached the Conquest to see if the people inside were injured. Police and emergency medical personnel were contacted.

Jennifer Jordan, a paramedic, arrived at the collision site and was directed to take care of appellant, who was sitting in the driver's seat of the Conquest. O'Boyle was being tended to by personnel from another ambulance. Jordan testified that appellant was "having difficulty remembering the incident as far as what had occurred and things like that, just his speech seemed a little bit that he had been drinking, seemed a little bit slow to respond." She also noticed an odor of alcohol from appellant's breath, so she asked him whether he had been drinking. Appellant reported that he had had two California iced teas that evening.

When Sergeant Denard Allen of the Maryland State Police arrived at the scene of the collision, he found appellant in his car attempting to wake up O'Boyle. Sergeant Allen noticed "a strong odor of an alcoholic beverage coming from the interior of the vehicle." He could not tell whether the odor was emanating from the driver or O'Boyle. Sergeant Allen asked appellant whether he had been drinking, and appellant said he had had a beer during the day. Because appellant was complaining of chest injuries, Sergeant Allen did not ask appellant to perform any field sobriety tests.

Sergeant Allen further testified that the speed limit on the stretch of road where the collision occurred was 55 miles per hour. Using a diagram he made of the collision, Sergeant Allen explained that the road had in the area of the collision four lanes in each direction. The diagram depicted appellant's car moving from the far left lane two lanes to the right, then crossing the two left lanes to hit the Jersey wall head-on. Appellant and O'Boyle were transported to the University of Maryland Shock Trauma Unit. O'Boyle died as a result of the injuries she sustained in the collision. Appellant was treated and released on the morning of the collision.

## Discussion

### I. Admission of Toxicology Report as a Business Record

Appellant argues that the trial court erred by admitting evidence of his blood alcohol test results in violation of Maryland Rule 5–902. Specifically, appellant contends that the toxicology report was not admissible under the business records exception to the hearsay rule because it was not authenticated in the manner required by the rule. We agree.[3]

### Background

Dr. Barry Levine, the Chief Toxicologist for the Office of the State Medical Examiner, testified for the State as an expert in forensic toxicology. He testified that his primary functions are overseeing the alcohol and drug analysis on postmortem cases, as well as overseeing the State's alcohol testing program for breath and blood.

The State showed Dr. Levine a copy of a toxicology report, which he identified as one used by the University of Maryland Medical System for toxicology screens. The report had appellant's name on it, indicated that a blood sample had been taken at 3:10 a.m. on August 12, 1994, and that the tests were completed at 2:45 a.m. on August 16, 1994. Over appellant's objection, Dr. Levine further testified that, according to the report, the alcohol concentration in appellant's blood at the time of the test was .216.[4] Dr. Levine then testified, still over

---

3. Appellant raises two additional arguments besides improper authentication regarding the inadmissibility of the toxicology report. First, he argues that the report was inadmissible because it was not "pathologically germane" to medical treatment or diagnosis. Second, appellant contends that admission of the report violated his "constitutional right to confront the technician who obtained the result." Because we reverse on the basis of appellant's authentication argument, we do not reach appellant's additional arguments.

4. The court asked Dr. Levine whether "that screen of the Defendant's blood [was] pathologically germane to his treatment." Dr. Levine responded, "I am not qualified to discuss the medical aspects of the specimen. I do know it's routine on all shock trauma cases that specimens are collected for screening for alcohol and drugs." Because

appellant's objections, about the effects that such a blood alcohol concentration would have on an individual's driving ability.

Attached to the front of the toxicology report was a cover letter signed by the Director of Medical Record Services and the Custodian of Records for the University of Maryland Medical System. The letter read as follows:

> This is to certify that the enclosed medical records are an accurate reproduction of the medical records pertaining to patient WILLIAM BRYANT, which are created and kept during the normal course of business. These records are housed in the Medical Record Services Department of the University of Maryland Medical System from the time of patient discharge or release. Both inpatient and outpatient records are housed in one medical record. To the best of my knowledge, these are the complete medical records of this patient.

The toxicology report was admitted into evidence over appellant's objection. Trial recessed for the day after Dr. Levine's cross-examination. The next morning, defense counsel again objected to the admission of the report, arguing, *inter alia,* that the certification of the record was not authenticated in accordance with Maryland Rule 5–902(a)(11), pertaining to business records.[5] Counsel pointed out that nothing in the report established that the "William Bryant" named in the document was the same William Bryant on trial. Moreover, there was no testimony or evidence indicating that the report was prepared "at or near the time of the occurrence of the matters set forth" as required by the rule.

---

he had no personal knowledge of the toxicology report, all of Dr. Levine's testimony pertaining to the report (other than that which he read off the document itself) was based on his general familiarity with University of Maryland clinical laboratory procedures.

5. The discussion regarding the admissibility of the toxicology report took place outside the presence of the jury.

The State responded that the certification made by the custodian of records was sufficient authentication for admissibility. The court overruled appellant's objection, stating:

> I find that the cover letter from the University of Maryland Medical System dated September 19, 1994, is sufficient authentication of the toxicology report. I also find that the Jury could certainly infer that the William Bryant listed on the toxicology report is the same William Bryant who is a Defendant in this case. As I mentioned earlier, the blood specimen was received on August 12, 1994, which, of course, was the date of this accident. You couple that with the testimony of the para[medic], Ms. [Jordan], that she treated the Defendant at the scene, she has identified the Defendant, she accompanied him to the Shock Trauma and then filled out her forms.

> So I think certainly there's sufficient evidence from which the Jury could infer that the William Bryant listed on the toxicology report is the Defendant. I find that State's Exhibit One, the toxicology report, is a business record under *Langway vs. State*, 94 Md.App. 407, 617 A.2d 1117.[6] I find that there has been testimony by Doctor Levine that this report was kept in the regular course of business and that the toxicology screen of the Defendant's blood was pathologically germane to treatment and I believe that satisfies the requirements set forth in *State vs. Garlick*, 313 Md. 209, 545 A.2d 27, and supports the admissibility of State's Exhibit One.

### Authentication

■ Business records are not admissible until they have been properly authenticated, either through a testifying sponsor or in conformity with Md. Rule 5–902(a). *See, e.g., Foreman v. State*, 125 Md.App. 28, 36, 723 A.2d 912 (1999). Rule

---

6. *Langway v. State*, 94 Md.App. 407, 617 A.2d 1117 (1993), does not support admission of the report. As appellant notes, *Langway* dealt not with the admissibility of a document, but with jury instructions.

5–902(a)(11), which specifically addresses business records, provides:

> Certified records of regularly conducted business activity. The original or a duplicate of a record of regularly conducted business activity, within the scope of Rule 5–803(b)(6), which the custodian or another qualified individual certifies (A) was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters, (B) is made and kept in the course of the regularly conducted business activity, and (C) was made and kept by the regularly conducted business activity as a regular practice, unless the sources of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

■ Even if Dr. Levine's testimony sufficiently established that the toxicology report was the type of record kept by the University of Maryland Medical System in the regular course of business, and even if the jury could infer that the "William Bryant" named on the document was appellant, the evidence was still insufficient to satisfy Rule 5–902(a)(11). Neither Dr. Levine's testimony nor the cover letter attached to the toxicology report indicated when the report was made; thus, there was no evidence that the report was made at or near the time of the test.[7] Moreover, there was no indication in the cover letter, Dr. Levine's testimony, or the report itself as to who prepared the report. Without this information, there was no evidence that the report was made by a person with knowledge of the test results as required by Rule 5–902(a)(11).

■ The Maryland Code specifically addresses the admissibility of toxicology reports in alcohol-related cases. The Code provides that the technician who administered the toxicology

---

7. Because there is no evidence in the record as to when the toxicology report was prepared, we do not address what would otherwise constitute a record being prepared "at or near the time of the occurrence of the matters set forth," as provided in Rule 5–902(a)(11). We simply note that without any evidence on this issue, the State did not establish that this element of the rule was satisfied.

test need not actually testify in all cases. When that individual does not testify, however, § 10–306 of the Code provides additional requirements that the report must meet in order to be admissible:

> (a) *In general.*—(1)(i) Subject to the provisions of paragraph (2) of this subsection, in any criminal trial in which a violation of § 16–113(a)(2) [alcohol restriction on driver's license], § 16–813 [driving with any concentration of alcohol in individual's blood or breath], or § 21–902 [driving while intoxicated or under the influence of alcohol and/or drugs] of the Transportation Article, or a violation of Article 27, § 388 [manslaughter by automobile], § 388A [homicide by motor vehicle while intoxicated], or § 388B [life threatening injury by motor vehicle while intoxicated] of the Code is charged or is an issue, a copy of a report of the results of a test of breath or blood to determine alcohol concentration *signed by the technician or analyst who performed the test,* is admissible as substantive evidence without the presence or testimony of the technician or analyst who performed the test.

> \*       \*       \*

> (2) To be admissible under paragraph (1) of this subsection, the report shall:

> (i) Identify the technician or analyst as a "qualified person[,"] as defined in § 10–304 of this subtitle; [8]

> (ii) State that the test was performed with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer; and

> (iii) State that the result of the test is as stated in the report.

---

8. Section 10–304(a)(3) defines "qualified person" as " a person who has received training in the use of the equipment in a training program approved by the toxicologist under the Postmortem Examiners Commission and who is either a police officer, a police employee, an employee of the office of the Chief Medical Examiner, or a person authorized by the toxicologist under the Postmortem Examiners Commission."

Maryland Code (1973, 1998 Repl.Vol.), Courts & Judicial Proceedings Article, § 10–306 (emphasis added).[9]

In this case, the only "signatures" appearing on the toxicology report are in the form of initials.[10] Without any additional testimony or evidence identifying the analyst(s), the report would only be admissible with the testimony of the analyst, as can be inferred from paragraph (1), above. Even if the initials were sufficient identification under paragraph (1), which we do not hold, the report did not meet any of the requirements for admissibility set forth in paragraph (2).[11]

We find that the toxicology report did not satisfy Rule 5–902(a)(11), and therefore was not properly authenticated as a business record. In addition, the report did not meet the requirements of Maryland Code § 10–306, regarding the admissibility of toxicology reports. Therefore, the report was not properly authenticated and the trial court erred in admitting it.

---

**9.** Appellant was charged with violations of Maryland Code § 21–902, § 16–113, and Article 27, §§ 388, 388A, *inter alia.* We further note that the Court of Appeals held in *State v. Loscomb,* 291 Md. 424, 430–31, 435 A.2d 764 (1981), that "the legislative history ... establishes that the Legislature intended the requirements of § 10–302 through § 10–309 to apply in prosecutions for the violation of *any* law concerning a person accused of driving while intoxicated or impaired."

**10.** Initials appear in several spaces on the report and are seemingly those of four different individuals. As to the blood specimen, the letter "B" appears in the space marked "identified by." In the space marked "analyst," the "B" again appears, followed by a slash mark and the letters "BJ." As to the urine specimen, the "B" appears again in the "identified by" and in the "analyst" spaces. In the "analyst" space, the "B" is followed by a slash line and what we can infer are initials, although they are completely illegible. Finally, at the bottom of the report in the space labeled "certified by," there appears a completely different set of illegible initials.

**11.** For a discussion regarding the required elements of proof for admitting toxicology reports, see 68 Md. Op. Atty. Gen. 446 (1983). Relying on §§ 10–303—307, the opinion states that as foundation to the introduction of blood alcohol test results, "the State must introduce ... evidence that the test was administered by a person qualified to do so under the law." The opinion also discusses various means of meeting the Code's requirements.

*Harm*

■ Although neither party raises the issue of harm, we will address it in the interest of completeness. In this case, there was limited evidence connecting appellant to alcohol. Besides the toxicology report, Maryland State Police Sergeant Denard Allen, who responded to the scene of the collision to investigate, testified that he smelled "a strong odor of an alcoholic beverage coming from the interior of the vehicle," although he "couldn't tell whether it was coming from the driver or the passenger." When he asked appellant whether he had been drinking, appellant "indicated that he had a drink, had a beer earlier, that was earlier during the day, that they had been out celebrating." Sergeant Allen further testified that he did not ask appellant to perform any field sobriety tests because appellant was complaining of chest injuries. The final piece of evidence suggesting that appellant may have been under the influence of alcohol was the testimony of Jennifer Jordan, the paramedic who arrived on the scene to initially treat appellant. She testified that "there was an odor of alcohol . . . coming from [appellant's] breath" when she first asked him what had happened. When she asked appellant whether he had been drinking, he "hesitated initially," but then admitted that "he had two California iced teas that evening."

In *Dorsey v. State*, the Court of Appeals held:

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Dorsey*, 276 Md. 638, 659, 350 A.2d 665 (1976).

Upon reviewing the evidence presented at trial regarding appellant's level of intoxication on the evening of the collision,

we are not persuaded beyond a reasonable doubt that the toxicology report did not influence the verdict. Accordingly, we reverse appellant's convictions of homicide by motor vehicle while under the influence of alcohol and driving under the influence of alcohol.

## II.  Jury Instructions

Appellant's second contention is that the trial court erred in instructing the jury on the elements of homicide by motor vehicle while under the influence of alcohol. Because we are reversing appellant's conviction, we need not consider this question.

## III.  Conclusion

The circuit court erroneously admitted appellant's toxicology report as a business record when the report was not properly authenticated. We reverse appellant's convictions of homicide by motor vehicle while under the influence of alcohol and driving under the influence of alcohol. We affirm appellant's convictions of negligent driving, driving at unreasonable speed, and failure to control speed.

**JUDGMENTS REVERSED AS TO HOMICIDE BY MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL AND DRIVING UNDER THE INFLUENCE OF ALCOHOL; JUDGMENTS AFFIRMED AS TO REMAINING CONVICTIONS.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**