761 A.2d 925

STATE of Maryland

v.

William Dunlock BRYANT.

No. 16, Sept. Term, 2000.

Court of Appeals of Maryland.

Nov. 14, 2000.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for petitioner/cross-respondent.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY *, RAKER, WILNER, CATHELL and HARRELL, JJ.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

RAKER, Judge.

We granted the State's petition for certiorari in this case primarily to determine the requirements under Maryland Rule 5–902(a)(11) for the admissibility of hospital records as certified records of regularly conducted business activity without the in-court testimony of the hospital records custodian. We agree with the Court of Special Appeals that the toxicology report was not properly authenticated, and accordingly we shall affirm.

Respondent was convicted in the Circuit Court for Baltimore County of homicide by motor vehicle while under the influence of alcohol, driving under the influence of alcohol, negligent driving, driving at unreasonable speed, and failure to control speed. The Circuit Court sentenced Bryant to a term of imprisonment of one year and a fine of $1000 for homicide by motor vehicle and driving while under the influence of alcohol. The trial court merged the remaining convictions for sentencing purposes.

Bryant noted a timely appeal to the Court of Special Appeals. The intermediate court reversed Respondent's convictions for homicide by motor vehicle while under the influence of alcohol and driving under the influence of alcohol, *see Bryant v. State*, 129 Md.App. 690, 743 A.2d 814 (2000), holding that a toxicology report had been improperly admitted in evidence under the business records exception to the hearsay rule, Maryland Rule 5–803(b)(6). The Court of Special Appeals held that the toxicology report was inadmissible on two grounds: first, that it did not meet the requirements of Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.) § 10–306 of the Courts and Judicial Proceedings Article regarding the admissibility of test results without the testimony of the technician; and, second, because it was not authenticated in the manner required by the self-authentication rule, Rule 5–902(a)(11). *See Bryant,* 129 Md.App. at 699, 743 A.2d at 819.

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

We granted certiorari to clarify the requirements of Rule 5–902(a)(11) allowing hospital records to be admitted as certified records of regularly conducted business activity without the in-court testimony of the hospital records custodian and to reiterate that § 10–306 is not applicable to hospital records like those in this case.[1]

At approximately 1:30 a.m. on August 12, 1994, Respondent, William Dunlock Bryant, was driving northbound on Interstate 95 near White Marsh, along with one passenger, Gertrude O'Boyle. The speed limit on that particular stretch of highway was fifty-five miles per hour and there were four lanes of traffic in each direction. Respondent passed another vehicle traveling in his lane, containing Mark Williams, the driver, and Brian Shillman, a passenger. Shillman estimated that Respondent was driving between seventy and seventy-five miles per hour. Williams estimated that Respondent was driving between seventy-five and eighty miles per hour. According to Shillman, approximately one-half to three-quarters of a mile later, the tail lights of Respondent's car veered toward the center wall, and the car crashed in a spray of debris.

Police Sergeant Denard Allen arrived at the scene and found Respondent in his car attempting to awaken O'Boyle. Sergeant Allen testified that there was a strong odor of alcohol coming from the interior of the vehicle, although he could not tell whether it was coming from Respondent or O'Boyle. Sergeant Allen asked Respondent if he had been drinking, and Respondent responded that he had had a beer

---

1. While we affirm the Court of Special Appeals' decision reversing Respondent's convictions for homicide by motor vehicle while under the influence of alcohol and driving under the influence of alcohol on other grounds, we note that Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.) § 10–306 of the Courts and Judicial Proceedings Article is not applicable to this case. Sections 10–302—10–309 pertain to compulsory chemical tests administered by law enforcement personnel for the purpose of determining a suspect's blood alcohol concentration. These sections do not apply in a case, such as this, where the blood sample is taken by hospital personnel for the apparent purpose of medical treatment. *See State v. Moon*, 291 Md. 463, 436 A.2d 420 (1981).

during the day. Because Respondent was complaining of chest injuries, Sergeant Allen did not ask him to perform any field sobriety tests.

A paramedic, Jennifer Jordan, arrived at the scene of the accident and began to care for Respondent, who was still seated in the driver's seat of the car. Paramedics from another ambulance were attending to O'Boyle. Jordan testified that Respondent had difficulty remembering the events of the accident, that his speech seemed as if he had been drinking, and that he seemed a little bit slow to respond. She noticed that his breath smelled like alcohol and asked him if he had been drinking. Respondent responded that he had had two "California iced teas" that evening.

Respondent and O'Boyle were transported to the University of Maryland Shock Trauma Unit. A sample of Respondent's blood was taken at 3:10 a.m. for a toxicology screen. Respondent was treated and released on the morning of the accident. O'Boyle died as a result of her injuries.

On December 11, 1998, Respondent was convicted by a jury in the Circuit Court for Baltimore County of homicide by motor vehicle while under the influence of alcohol, driving under the influence of alcohol, negligent driving, driving at unreasonable speed, and failure to control speed. The jury found Respondent not guilty of automobile manslaughter, homicide by motor vehicle while intoxicated, driving while intoxicated, reckless driving, and unsafe lane change.

At trial, the State introduced a toxicology report from the University of Maryland Medical System. The report had Respondent's name on it, and it indicated that the blood specimen had been received on August 12, 1994 at 3:10 a.m. and that testing had been completed on August 16, 1994 at 2:45 a.m. The toxicology report showed a blood alcohol concentration of 216 milligrams per deciliter. Attached to the front of the toxicology report was a cover letter signed by the Director of Medical Record Services and the Custodian of Records for the University of Maryland Medical System, which read as follows:

This is to certify that the enclosed medical records are an accurate reproduction of the medical records pertaining to patient WILLIAM BRYANT, which are created and kept during the normal course of business. These records are housed in the Medical Record Services Department of the University of Maryland Medical System from the time of patient discharge or release. Both inpatient and outpatient records are housed in one medical record.

To the best of my knowledge, these are the complete medical records of this patient.

Defense counsel argued that the custodian's statement was insufficient to form a proper foundation for authentication as a business record under Rule 5–902 and that the document did not contain sufficient identifying information to establish Respondent as the patient to whom the report referred.

Over defense counsel's objection, the trial court admitted the toxicology report as a business record. The court found that the cover letter from the University of Maryland Medical System was sufficient authentication of the toxicology report and that the testimony of Dr. Barry Levine, Chief Toxicologist for the Maryland Office of the Chief Medical Examiner, was sufficient to establish that the report was kept in the regular course of business, that the toxicology screen of Respondent's blood was pathologically germane to treatment, and, thus, that the requirements of admissibility were established.

Petitioner argues that the custodian's certification of the toxicology report in this case, along with its contents, constituted a sufficient evidentiary foundation to authenticate it properly as a business record. Petitioner maintains that the custodian was qualified to authenticate the contents of the report—that she *could* attest to the time that the report was made and had sufficient personal knowledge of the matters that it contained. Petitioner also maintains that the report itself contains evidence that it was timely, made by a person with knowledge of its matters, and kept consistent with the hospital's regular course of business.

Respondent counters that the report was not adequately authenticated with respect to the time that it was made, the person who made it, and the form of the certification provided by the hospital records custodian. He also argues that the trial judge's admission of the toxicology report in evidence without proper foundation or indicia of reliability denied him his right of confrontation.

Resolution of the issues presented in this case requires us to consider two related rules of evidence—Rule 5–803(b)(6) and Rule 5–902(a)(11). Rule 5–803 sets forth several exceptions to the rule excluding hearsay that do not require the unavailability of the declarant in order for the declaration to be admissible. Rule 5–803(b)(6) addresses the business records exception to the hearsay rule. That rule states as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... A memorandum, report, record, or data compilation of acts, events, conditions, opinions, or diagnoses if (A) it was made at or near the time of the act, event, or condition, or the rendition of the diagnosis, (B) it was made by a person with knowledge or from information transmitted by a person with knowledge, (C) it was made and kept in the course of a regularly conducted business activity, and (D) the regular practice of that business was to make and keep the memorandum, report, record, or data compilation. A record of this kind may be excluded if the source of information or the method or circumstances of the preparation of the record indicate that the information in the record lacks trustworthiness.

Rule 5–803(b)(6). The authenticity requirements for the admissibility of a business record are set forth within the rule as (A) through (D). There are two ways that the necessary evidentiary foundation for admitting business records may be established: by extrinsic evidence (usually live witness testimony) regarding the four requirements of Rule 5–803(b)(6) or by "self-authentication" pursuant to Rule 5–902(a)(11).

Rule 5–902, which was adopted by the Court of Appeals in 1994, sets out the class of records for which extrinsic evidence of authenticity is not a condition precedent to admissibility. Rule 5–902 was modeled on a 1986 amendment to the Uniform Rules of Evidence, *see* UNIF.R.EVID. 902(11), which added a provision for the self-authentication of certified copies of business records. Uniform Rule 902(11) was based on the federal statute providing for the self-authentication in criminal proceedings of certified copies of foreign records of regularly conducted activity. *See* 18 U.S.C. § 3505 (1988); Lynn McLain, *Self Authentication of Certified Copies of Business Records*, 24 BALTIMORE L.REV. 27, 27–28, 36–37 (1994). It extended the applicability of the certification by affidavit to domestic business records in both criminal and civil proceedings. *See* McLain, *supra*, at 28. Rule 5–902 was designed in the interest of judicial economy to eliminate the need to call foundation witnesses for evidence that is so likely to be authentic that extrinsic evidence is unnecessary. *See id.* at 32.

■ Rule 5–902(a)(11) creates an alternative method for authenticating business records without requiring the live testimony of the records custodian. It allows proof, by certification, of the same facts to which a witness would have been required to testify in court to lay the foundation for the hearsay exception at trial. *See id.* at 51. That rule provides as follows:

> The original or duplicate of a record of regularly conducted business activity, within the scope of Rule 5–803(b)(6), which the custodian or another qualified individual certifies (A) was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters, (B) is made and kept in the course of the regularly conducted business activity, and (C) was made and kept by the regularly conducted business activity as a regular practice, unless the sources of information or the method or circumstances of preparation indicate a lack of trustworthiness. . . .

Rule 5–902(a)(11). "Certification," as that term is employed in Rule 5–902 with respect to domestic records, requires "a written declaration under oath subject to the penalty of perjury." Rule 5–902(b). Proper certification, under Rule 5–902(a)(11), establishes a prima facie foundation for the business records exception. *See* McLain, *supra*, at 34.

In this case, the trial judge erred in admitting the toxicology report without an adequate evidentiary foundation to authenticate it. The "certification" attached to the toxicology report does not, on its face, meet the requirements of Rule 5–902(a)(11).[2] First, it is not under oath subject to the penalty of perjury. Second, the custodian never certified that the report was made at or near the time of the occurrence of the matters that it sets forth by a person with knowledge of those matters or that it was made and kept by the regularly conducted business activity as a regular practice. Even if Petitioner is correct that the custodian of records had sufficient personal knowledge to certify the authenticity of the toxicology report, the custodian failed to do so in the cover letter presented.[3] Since the foundational requirements of

---

2. We point out that the custodian's "certification" in this case conforms exactly to the requirements of the custodian's *certificate* in Maryland Rule 3–510(h), the rule governing the admission of hospital records in civil actions in the District Court. That rule allows a hospital that has been served with a subpoena *duces tecum* for patient records to deliver copies of the records to the Clerk of the District Court with "a certificate of the custodian that they are the complete records for the patient for the period designated in the subpoena and that the records are maintained in the regular course of business of the hospital." Rule 3–510(h). It would seem that, in this case, the hospital records custodian simply followed the wrong rule. *Cf.* Maryland Code (1996, 1998 Repl.Vol., 2000 Supp.) § 10–104 of the Courts and Judicial Proceedings Article (providing an alternative method of authenticating medical records without the testimony of a health care provider or custodian in certain civil actions for personal injuries and insurance benefits).

3. The United States Court of Appeals for the Third Circuit, in interpreting Federal Rule of Evidence 803(6), the federal business records exception to the hearsay rule, has also held that, even though a noncustodial witness or documentary evidence may lay the foundation for admission of records, the witness or document still must attest to each of the foundational elements of the rule. The court noted:

Rule 5–902(a)(11) apply to the *certification by the custodian,* not to evidence contained in the document seeking to be admitted, this deficiency is fatal to any self-authentication under Rule 5–902.

Furthermore, the toxicology report is ambiguous, at best, with regard to its timeliness and to the personal knowledge of the person who made the report. The report indicates the date that Respondent's blood samples were received and the date that the tests were completed, i.e., four days later, but there is no indication on its face of when the report was actually made. In addition, the fact that there appear to be initials in the two spaces marked "IDENTIFIED BY" and "ANALYST" is insufficient evidence to prove that the report was made by a person with knowledge of the matters that it contains.

Our inquiry, however, does not end with the inapplicability of Rule 5–902. The failure of the cover letter to establish a sufficient foundation for self-authentication pursuant to Rule 5–902 does not exclude authentication of the report by extrinsic evidence. *See* Rule 803(b)(6).[4] At trial, the State called Dr. Barry Levine, Chief Toxicologist for the

---

While a noncustodial witness such as a government agent, or even documentary evidence, may be used to lay the foundation required by Rule 803(6), that witness or those documents must still demonstrate that the records were made contemporaneously with the act the documents purport to record by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept by the business. . . . Here, Agent Wolverton did not purport to have familiarity with the record-keeping system of the banks, nor did he attest to any of the other requirements of Rule 803(6). Therefore, as proponent of the evidence, the Government has failed to lay a proper foundation as required by the business records exception.
*United States v. Pelullo,* 964 F.2d 193, 201–02 (3rd Cir.1992).

4. While the usual method of extrinsic authentication under Rule 803(b)(6) is by in-court testimony by the records custodian, business records can also sometimes be authenticated by circumstantial evidence of the manner of creation and nature of the document involved. *See Attorney Grievance Comm'n v. Keister,* 327 Md. 56, 74–75, 607 A.2d 909, 918 (1992); *Pine St. Trading Corp. v. Farrell Lines, Inc.,* 278 Md. 363, 373, 364 A.2d 1103, 1110 (1976).

Office of the Chief Medical Examiner for the State of Maryland, who is also on the faculty of the University of Maryland, to testify regarding the results of the toxicology screen. While conceding that he could not testify regarding pathological germaneness, Dr. Levine testified that it was routine to collect specimens for alcohol and drug screening in all shock trauma cases in order to determine possible intoxication and probable treatment. He also testified that he was familiar with the clinical laboratory procedures of the hospital and that the report was made in the regular course of business of the hospital. Nonetheless, Dr. Levine *never* testified that the report was made at or near the time of the tests or that it was made by a person with knowledge, as Rule 5–803(b)(6) requires. Therefore, his testimony also was inadequate to establish the necessary evidentiary foundation to admit the toxicology report. As a result, the Court of Special Appeals was correct in concluding that the toxicology report was not properly authenticated as a business record and that the trial court erred in admitting it.[5]

---

5. As we reach this conclusion on the basis of the plain meaning of the Maryland Rules and the Maryland common law of evidence, we shall not address Respondent's right of confrontation claim under U.S. CONST. amend. VI and MD.DECL. OF RIGHTS art. XXI. *See, e.g., Hillard v. State,* 286 Md. 145, 150 n. 1, 406 A.2d 415, 418 n. 1 (1979); *State v. Raithel,* 285 Md. 478, 484, 404 A.2d 264, 267 (1979) (upholding well-settled judicial principle of not deciding constitutional issues unnecessarily).

Generally, hospital records may be admitted under the business records exception to the hearsay rule, Rule 5–803(b)(6). *See State v. Garlick,* 313 Md. 209, 216, 220, 545 A.2d 27, 30, 32 (1988) (applying Maryland Code (1973, 1998 Repl.Vol., 2000 Supp.) § 10–101 of the Courts and Judicial Proceedings Article, the statutory business records exception to the hearsay rule enacted prior to the adoption of Rule 5–803(b)(6) by the Court of Appeals). In order for hospital records to be considered records of regularly conducted business activity, however, and therefore presumptively reliable and trustworthy, the records must be generated as part of the hospital's regular course of treatment—i.e., pathologically germane to the patient's care and not developed for the purposes of litigation. *See id.* at 221–23, 545 A.2d at 33; *Jones v. State,* 205 Md. 528, 532, 109 A.2d 732, 734 (1954).

We also do not reach Respondent's argument that the toxicology report was not pathologically germane to his treatment because it was not completed until several days after he was discharged from the

■ The State contends that, even if the admission of the toxicology report was error, it was harmless error. Once error has been established in a criminal case, the State bears the burden of proving, beyond a reasonable doubt, that the error did not contribute to the guilty verdict in any way. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

The toxicology report indicated that Respondent had a blood alcohol concentration of 216 milligrams per deciliter. Dr. Levine testified that a .216 blood alcohol concentration would correspond to consumption of a minimum of nine standard drinks for an individual of Respondent's size. He also testified that, with a .216 blood alcohol concentration, "all individuals" would have a "severe impairment due to alcohol." He testified specifically that "all individuals are severely intoxicated at .216" and that such a blood alcohol level would negatively effect judgment and decision-making ability and that vision and multitasking ability would be impaired.

While there was other evidence that tended to prove that the defendant was intoxicated and/or under the influence of alcohol at the time of the accident, we cannot conclude beyond a reasonable doubt that the error in admitting the toxicology report did not in any way contribute to the verdicts. *See Krauss v. State,* 322 Md. 376, 587 A.2d 1102 (1991) (holding

hospital and only after a request for records from the State's Attorney's Office. *Compare Moon v. State,* 300 Md. 354, 370–72, 478 A.2d 695, 703–04(1984) (holding that, since reliability of blood test results was questionable because they lacked the Petitioner's name and there was a three-day delay between collection of the sample and testing, and since the technician was available to testify, it was error not to require live testimony for admission) *with Garlick,* 313 Md. at 226, 545 A.2d at 35 (holding that, since laboratory test results had facial indicia of reliability and were kept in the regular course of treatment, the technician's testimony was not required to admit them). The record in this case is insufficient for us to determine whether the toxicology report was pathologically germane to Respondent's treatment and, therefore, reliable. More importantly, we do not reach the issue of whether the report is admissible as a business record, since we have found that it was error to admit it in evidence as it had not been properly authenticated either by the cover letter or the testimony of Dr. Levine.

**432**

that error in admitting the defendant's refusal to take a breathalyzer test was not harmless).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*