**EVIDENCE – HEARSAY – PRESCRIPTIONS**

Medical prescriptions for oxycodone, methadone, and alprazolam are not hearsay when offered as a statutory defense to the offenses of possession of controlled dangerous substances and possession of controlled dangerous substances with intent to distribute.

Circuit Court for Baltimore City
Case No. 114169016

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 928

September Term, 2016

STEVEN YOUNG

v.

STATE OF MARYLAND

Wright,
Graeff,
Raker, Irma S.
 (Senior Judge, Specially Assigned),

JJ.

Opinion by Raker, J.

Filed: December 1, 2017

Appellant Steven Young appeals his convictions in the Circuit Court for Baltimore City for possession of heroin with intent to distribute, possession of oxycodone with intent to distribute, possession of methadone with intent to distribute, possession of alprazolam with intent to distribute, possession of heroin, possession of oxycodone, possession of methadone, and possession of alprazolam. He raises the following two questions for our review, which we have rephrased and re-ordered:

> 1. Did the circuit court err when it excluded appellant's evidence of written prescriptions for controlled substances when appellant was charged with the unlawful possession of and possession with intent to distribute those controlled substances?

> 2. Did the circuit court err by admitting appellant's post-arrest statements without holding a suppression hearing or ruling on appellant's motion to suppress based on an allegedly unlawful arrest?

We shall hold that the trial court erred by excluding as hearsay evidence of written prescriptions. The motion to suppress was not preserved for our review. Accordingly, we shall reverse in part and affirm in part.

I.

By indictment filed in the Circuit Court for Baltimore City, appellant was charged with crimes related to controlled dangerous substances found in a police search of a house on May 28, 2014. The jury convicted appellant of possession of heroin with intent to distribute, possession of oxycodone with intent to distribute, possession of methadone with intent to distribute, possession of alprazolam with intent to distribute, possession of heroin,

possession of oxycodone, possession of methadone, and possession of alprazolam. The circuit court sentenced appellant to four terms of incarceration of thirteen years, one for each count of possession with intent to distribute, to be served concurrently.

The following evidence was presented at trial: On May 28, 2014, Detective Manuel Larbi executed a search warrant at 2580 Marbourne Avenue in Baltimore ("the residence"). Detective Larbi had surveilled the residence for a number of weeks, and identified appellant in the warrant application as a person observed at the residence. The application, however, only sought to search the residence—the form space on the warrant stating "on the person of" was left blank.

Immediately prior to executing the warrant, Detective Larbi conducted covert surveillance of the area around the residence, where he observed appellant and another man, Arnold Bowman, in the street working on a car. Their specific location was estimated to be anywhere from directly in front of the residence to two blocks away.[1] Detective Larbi's team pulled up next to appellant and Mr. Bowman. The police officers got out of their cars, handcuffed the two men, searched them, and walked them to the residence. The officers then brought the men into the residence to wait while the officers conducted their search. Inside the residence, officers found and detained appellant's wife Angela Grubber. The officers advised all three persons of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

---

[1] Detective Larbi placed the men "in front of" and "two houses down from" the residence in the Statement of Probable Cause and his trial testimony, respectively. Another witness, speaking at different times, placed the men half a block away, and two blocks away, from the residence.

Appellant told the officers "that he lived in the [residence]" and that he "did have some [drugs] in his bedroom." In that bedroom, Detective Larbi found 32 pills of methadone, 7 pills of Xanax, and 3.5 grams of heroin. Detective Larbi also discovered in a kitchen cabinet downstairs 3 plastic bags each containing 100 oxycodone pills, another plastic bag containing 42 oxycodone pills, and $1,498 cash. When confronted with the drugs, appellant told Detective Larbi that he "sells some of it from time to time."

The Statement of Probable Cause for appellant's arrest listed appellant's address as 504 Manor Road, Glen Burnie, MD 20160. The Statement was signed by Detective Larbi.

On July 30, 2015, appellant filed a Motion to Suppress Search and Seizure and Request to Examine Affiant, entitled a "*Franks* Motion." The Motion challenged Detective Larbi's Application for Search and Seizure Warrant for the residence based on the truthfulness and timeliness of Detective Larbi's affidavit that he had observed appellant at the residence selling drugs to a confidential informant. He also challenged the later Statement of Probable Cause (supporting Detective Larbi's arrest of appellant) as containing factual errors, including as follows:

> "16. According to a witness, Rachel Ann Bunner, and the Defendant when the Police came to serve the Search Warrant, the Defendant was a quarter block down the road and across the street working on a vehicle, a Green Ford Explorer with Arnold Bowman. Police spotted the Defendant, stopped and searched both men, then handcuffed them and took them to 2580 Marbourne Avenue.
>
> 17. The Defendant is not an occupant of that dwelling, he does not live there, nor receive mail at 2580 Marbourne Avenue. The Defendant does not have telephone service there, his name is not on the BGE account or the Lease. In the Statement of Probable Cause Detective Larbi, under oath, put down

3

Defendant's address as 504 Manor Road, Glen Burnie, Maryland, but then alleged that the Defendant stated he lived at 2580 Marbourne Avenue.

18. Lastly, Detective Larbi claimed that the Defendant and Mr. Bowman failed to provide any prescriptions, that is false. The Defendant attempted to provide them to police during the incident and explained that he has valid prescriptions for Methadone, Xanax (alprazolam), and Percocet (a mixture of oxycodone and acetaminophen). The Defendant has also shown that his wife had valid prescriptions for Methadone, Xanax, and Percocet."

The motion was followed by a Memorandum of Law in support of the unlawful seizure claim on September 18, 2015, the State's Response on October 27, 2015, and appellant's Reply on November 12, 2015.

On January 13, 2016, the State orally moved *in limine* to suppress any evidence concerning the written prescriptions claimed by appellant. The State argued that the prescriptions constituted inadmissible hearsay and could not be authenticated as business records. The judge granted the motion before the State could finish and did not invite appellant's counsel to respond before moving on to the next motion. Appellant's counsel did not object to the ruling. Following what appears to be a chambers conference, the hearing proceeded as follows:

"[THE STATE]: And, Your Honor, the State's second motion that we spoke in chambers is the exclusion. State's moving a motion *in limine* to exclude any prescription evidence as it is, number one, hearsay, and, number two, not admissible hearsay because it does not fall within the exception of 803(6).
Defense is trying to enter into evidence, number one, a prescription—an alleged prescription of the defendant and, number two, a prescription by his wife, Angela Grubber, who is not going to testify today. These are copies of alleged prescriptions. They are not certified. The doctor is not present.

4

There's no certification or authenticity and it's excluded under 803(6). I do have a case, *Bryant v. State*, by the Court of Special Appeals where in a murder trial the defense tried to enter in a piece of paper that was the alleged toxicology report because it was murder. And the Court said it's hearsay, number one, even if the defendant took the stand—

[THE COURT]: Yeah. I'm familiar with that law because I had the very same issues several times. Okay. The motion is granted.

That leaves us to—the speedy trial . . ."

At the end of the day, the court postponed any hearing on appellant's motion to suppress until the next morning, stating as follows:

"[THE STATE]: We still have – we still have the motion issue to resolve.

[THE COURT]: Yeah, yeah, yeah.

[THE STATE]: Maybe that first thing in the morning? The witness has been here all day. He's waiting outside of the courtroom, but he's the same witness who would testify tomorrow as well.

[THE COURT]: Who is it again?

[THE STATE]: It's Detective Larbi.

[THE COURT]: Why can't we take him real quick?

[DEFENSE COUNSEL]: No, because I'm going to be a long time with him. I cannot be restricted when I do cross-examination. I never know. I can tell you five minutes. It could be a half hour. I never know. It depends on what they bring out and what they don't bring out. I mean there's really no reason you can't accommodate me knowing full well –

[THE COURT]: Which accommodation are you asking for that I'm not giving you?

[DEFENSE COUNSEL]: Recess until tomorrow.

5

[THE COURT]: Oh, okay.

[THE STATE]: If we recess until tomorrow, can we start the motion earlier?

[THE COURT]: Yeah. I'm thinking –

[THE STATE]: Like maybe start at 8:30 so at least we get the ball rolling.

[THE COURT]: Unfortunately, every Friday I have a prior commitment.

[THE STATE]: Tomorrow is Thursday.

[THE COURT]: I'm normally here at 7:30 in the morning. Friday –

[THE STATE]: Tomorrow is Thursday.

[THE COURT]: Oh, good. I'm sorry. I got it all confused. It's my age speaking. So Thursday – Thursday.

[THE STATE]: Can we bring him in here by 8:30? Can he be in here by 8:30?

[DEFENSE COUNSEL]: (indiscernible) It depends on the transportation.

[THE COURT]: All right. Well, that's the decision. We're going to start at 9:00. We're going to start at 9:00."

On January 14, at 9:42 a.m., the jury was sworn, and, significantly, the court did not address the suppression motion. Appellant's counsel did not mention the issue or request a hearing throughout the rest of the entire trial (nor did anyone else), and he did not object when the State introduced Detective Larbi's testimony that included appellant's statements.

6

As discussed *supra*, appellant was convicted and sentenced.[2]  This timely appeal followed.

## II.

Before this Court, appellant argues that the trial court erred in excluding evidence of appellant's prescriptions as hearsay.  Appellant claims that he did not offer the prescriptions for the truth of any matter asserted in them, but as a legal defense based on the language of the statutes, Maryland Code Ann., Crim. Law §§ 5-601, 5-602 (2002; 2012 Repl. Vol., 2015 Supp.).[3]  Simple possession has a statutory exception for possession of prescribed medications, which the prescriptions could prove.  The prescriptions, according to appellant, provided a defense to the intent to distribute charges because a prescription provides alternative explanations for possession of a prescribed drug besides selling it.  The prescriptions were probative of the asserted legal possession of the drugs, not the truth of any matter asserted in them.  If the prescriptions were hearsay, appellant continued, physician's orders fall squarely within the Maryland Rule 5-803(b)(4) exception for statements "made for purposes of medical treatment."[4]  Appellant argues also that the

---

[2] At sentencing, the possession charges were merged for sentencing into the charges that included intent to distribute.  Therefore the sentence was based on the four intent-to-distribute charges.

[3] Unless otherwise indicated, all subsequent statutory references herein shall be to Maryland Code Ann., Criminal Law Article.

[4] The Rule states as follows: (footnote continued . . .)

7

prescriptions should not have been excluded for lack of authentication because appellant had no chance to present evidence to meet that slight burden (requiring only a finding that the jury might find that the evidence is what its proponent claims).

Appellant argues that the court's failure to hold a hearing or rule on his motion to suppress his statements constituted reversible error. Appellant filed a written motion five months before trial to suppress any evidence as the fruits of an illegal seizure, and renewed the motion during pre-trial proceedings. The trial court agreed to hold a hearing on the motion, but never held the hearing or ruled on the motion. Appellant says that he never waived his motion, and the court erred in never resolving it.

The State argues that the prescriptions question is not preserved for appellate review because there is no evidence of the prescriptions in the trial court's record. Appellant did not proffer any copies of the prescription, nor any details such as the prescribing physician or amount of the prescriptions. The State maintains that the prescriptions were excluded properly as hearsay because they were introduced for the truth of the implied assertion that

---

"RULE 5-803. HEARSAY EXCEPTIONS: UNAVAILABILITY OF DECLARANT NOT REQUIRED
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*\*\*

(b) Other Exceptions.

\*\*\*

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical treatment or medical diagnosis in contemplation of treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external sources thereof insofar as reasonably pertinent to treatment or diagnosis in contemplation of treatment."

8

appellant and/or his wife had a medical condition that required the prescribed drugs.  Even if the prescriptions could be admitted, says the State, appellant offered no evidence to meet even the slight standard required for authentication.  Appellant did not make any effort on the record to argue that the prescriptions were admissible.  Because appellant's witness list did not offer any expert witnesses who could have authenticated the prescriptions, the State argues, it is reasonable to assume appellant had no evidence to authenticate them.

As to the trial court's failure to hold a suppression hearing, the State argues that appellant failed to preserve his claim for our review by not objecting to or mentioning the omitted hearing to the trial court at any time after the trial commenced.  Moreover and most significantly, during the trial, appellant did not object to the introduction of the statements he had sought to suppress when the State introduced that evidence at trial.

III.

A.

Before we address the trial court's exclusion of the prescription evidence, we address the State's preservation argument.  Preservation is controlled by Maryland Rules, interpretations of which are classified as questions of law.  *Williams v. State*, 435 Md. 474, 483, 79 A.3d 931, 936–37 (2013).  We review the trial court's interpretations of the rules as conclusions of law *de novo*, that is, without deference "to determine if the trial court was legally correct in its rulings on these matters."  *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004).

Rule 8-131(a) restricts appellate review generally to subjects that "plainly appear[]" by the record to have been raised in or decided by the trial court." Rule 4-323(c) further defines this standard for rulings excluding evidence[5] as follows:

> "[I]t is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. . . . If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection."

Finally, Rule 5-103(a)(2) requires, in order to overturn a ruling excluding evidence, that "the party is prejudiced by the ruling, and . . . the substance of the evidence [being excluded] was made known to the court by offer on the record or was apparent from the context within which the evidence was offered."

The trial court knew of appellant's desire to introduce the written prescriptions. The State moved to exclude the prescriptions *in limine* and the trial court granted the State's motion immediately, without affording comment from appellant's counsel. Without making an explicit objection, appellant made known to the trial court (as required by Rule 4-323(c)) his desire that the prescriptions be admitted in evidence. Appellant raised his defense that he and his wife had valid prescriptions for methadone, alprazolam, and oxycodone in his motion to suppress, and the trial court's exclusion of the evidence makes clear that the trial court was well aware that appellant desired to introduce the prescriptions.

---

[5] Rule 4-323(c) covers "Objections to Other Rulings or Orders." Sections (a) and (b) deal with objections to the admission of evidence, and (c) can be presumed to cover all other objections. Appellant is challenging the suppression of evidence, not its admission, leaving this question under the rules prescribed by section (c).

An objection or exception to the court's ruling when the court granted the *in limine* motion was unnecessary—the court gave appellant no opportunity to object to the ruling at that time and counsel was not required to argue with or confront the court. The court ruled on the State's motion without offering appellant's counsel any opportunity to respond or to argue his position. In fact, the trial court did not let the State finish its argument before granting the motion and immediately moving on. While appellant could have objected and asked to return to the topic, Rule 4-323(c) does not require such a remedial measure to preserve the issue for appeal. *Reed v. State*, 353 Md. 628, 639–40, 728 A.2d 195, 201 (1999). Appellant made no explicit offer of proof on the record, but the substance of the prescription evidence is apparent from both the charges against appellant, as discussed *infra*, and appellant's suppression motion. This apparent substance of the prescription evidence satisfies Rule 5-103(a)(2). Additionally, the court's ruling on the motion satisfies Rule 8-131(a)'s second option for preservation, a decision by the trial court. We hold that the issue is preserved for our review.

B.

Unlike other evidence, a trial court "has no discretion to admit hearsay in the absence of a provision providing for its admissibility." *Bernadyn v. State*, 390 Md. 1, 8, 887 A.2d 602, 606 (2005). Hearsay is thus an issue of law, not fact. *Id.* "Whether evidence is hearsay is reviewed *de novo*," without deference to the trial court. *Morales v. State*, 219 Md. App. 1, 11, 98 A.3d 1032, 1038 (2014).

Maryland Rule 5-801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

We hold that the trial court erred in excluding the prescriptions. They were not hearsay and were authenticated potentially by appellant.

Apparently, appellant did not plan to introduce the prescriptions to assert the truth of any matter stated in the prescriptions, just their existence. Sections 5-601 and 5-602 of the Criminal Law Article, which appellant was convicted of violating, read, in pertinent part, as follows:

> "**§ 5-601.** Possessing or administering controlled dangerous substance.
> (a) Except as otherwise provided in this title, a person may not:
>> (1) possess or administer to another a controlled dangerous substance, unless obtained directly *or by prescription or order from an authorized provider acting in the course of professional practice*; . . .
>
> **§ 5-602.** Distributing, possessing with intent to distribute, or dispensing controlled dangerous substance.
> Except as otherwise provided in this title, a person may not:
>> (1) distribute or dispense a controlled dangerous substance; or
>> (2) possess a controlled dangerous substance in sufficient quantity *reasonably to indicate under all circumstances* an intent to distribute or dispense a controlled dangerous substance."

(emphasis added). Section 5-601 applies only to drugs *not* obtained by a valid prescription. The statute does not require that the prescription be appropriate for a patient's medical condition, or that appellant in fact suffered from any particular medical condition, but only

12

that the prescription had been prescribed by "an authorized provider acting in the course of professional practice."

The State's analogy to *State v. Bryant*, 361 Md. 420, 428–29, 761 A.2d 925, 929 (2000) (holding that a written certification by the custodian of hospital records was insufficient to self-authenticate a toxicology report under Rule 5-902), which the trial court agreed with in granting the motion, was inapt. In that case, the report was not itself a defense to the charge, but was introduced by the State to prove the driver's intoxication in a vehicular homicide, *i.e.*, to prove the blood alcohol content asserted by the report. *See id.* at 431, 761 A.2d at 931. The State sought to authenticate the report as a hearsay exception for business records under Rule 5-803(b)(6). *Id.* at 425, 761 A.2d at 927. *Bryant* does not apply to prescriptions that are relevant to an element of the charge.

The United States Court of Appeals for the District of Columbia Circuit addressed a similar issue in *U.S. v. Bruner*, 657 F.2d 1278 (D.C. Cir. 1981). John Bruner and Carl Lynch were two of seven men convicted of unlawful distribution of a controlled substance, interstate travel in aid of a racketeering enterprise, and conspiracy to distribute narcotic drugs. *Id.* at 1282–83. The group flew women from Washington, D.C., to other cities, where the women would visit local doctors to acquire prescriptions for the weight-loss drug Preludin and the pain reliever Dalaudid and fill them at local pharmacies. *Id.* at 1283. Couriers would then pick up the drugs from the women and return the drugs to Washington. *Id.* The government's evidence included approximately five thousand prescriptions from Dr. Gus Bashien, who had knowingly written prescriptions for the conspiracy. *Id.*

13

Defendant Lynch objected to the prescriptions as inadmissible hearsay. *Id.* The court rejected his assertion, reasoning as follows:

> "In our view, the prescriptions were not admitted to prove the truth of the assertions they contained, and are, therefore, not hearsay. They were not offered to prove Dr. Bashien's or any of his patients' addresses. Nor were they offered to prove the doctor believed that the patient needed the drug prescribed, which is an assertion probably intended by the doctor when he wrote the prescriptions. They were offered in evidence to show they were used to obtain drugs."

*Id.* at 1284.

Section 5-602 charges of possession with intent to distribute could also be impacted by appellant's prescription evidence even though the statute does not include a specific prescription exception. To be convicted, a violator must "possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance." While possession of 342, 42, or even 7 pills, and the packaging of said pills, may suggest strongly that the drugs are not for personal use, we cannot as a matter of law say that possession was for distribution, as opposed to the trier of fact making that determination.

Valid prescriptions provide the basis of a statutory defense to the charges for possession of and possession of with intent to distribute methadone, alprazolam, and oxycodone. Introducing them for such purpose, when properly authenticated, is not hearsay. We hold that the trial court erred in excluding them as hearsay.

14

IV.

We turn to appellant's second issue—whether the trial court erred in not holding a hearing on his pre-trial motion to suppress. We hold that appellant did not preserve this issue for our review.

We note at the outset that the record before us is not as clear on this issue as it should be. Appellant filed a pre-trial motion, captioned an Omnibus Motion, requesting, *inter alia*, "all evidence be suppressed because of an unlawful search or seizure." Later, he filed a "Motion to Suppress Search and Seizure and Request to Examine Affiant (*Franks* Motion)." In his second motion, he alleged that "[a]ccording to a witness, Rachel Ann Bunner, and the Defendant when the Police came to serve the Search Warrant, the Defendant was a quarter block down the road and across the street working on a vehicle, a Green Ford Explorer with Arnold Bowman. Police spotted the Defendant, stopped and searched both men, then handcuffed them and took them to 2580 Marbourne Avenue."

In his memorandum of law, appellant argued that because the search warrant was for a particular house and not for any individual or named person, the detective lacked the authority to stop, search and arrest appellant, who was not at the house when police executed the search warrant. He requested a hearing on the motion. The State responded in writing, stating that appellant "is specifically referred to in the second paragraph of the affidavit," which established probable cause to seize him prior to entry into the residence.

The trial court appears to have addressed appellant's motion on several occasions. The record colloquy on the first day of trial indicates that the judge and counsel met in chambers and discussed the pending motion, although no one put a summary of the

15

chambers conference on the record. When the court asked about *Franks v. Delaware*, 438 U.S. 154 (1978), the prosecutor told the court, "I believe we litigated that issue, . . . the only remaining motion was the factual dispute as to the location as to challenging the arrest and the probable cause of Mr. Steven Young; whether the factual discrepancy between the two blocks or in front of 2580 Marbourne Avenue is left." At the end of the first day of trial, the court inquired about pre-trial motions, the prosecutor reminded the court of the outstanding motion that needed to be resolved, and the court was available to hear the motion "real quick." Following defense counsel's objection to a "real quick" hearing, the court agreed to proceed the next morning.

As we now know, the next morning, the search and seizure motion never came up and was never mentioned—not by the court, the prosecutor, nor, significantly, defense counsel. At trial, when Detective Larbi testified about the fruits of the arrest, *i.e.*, appellant leading officers to drugs that he claimed to possess and incriminating statements made by appellant that he "sells [drugs] from time to time," defense counsel remained silent and *never* objected to the admission of that evidence. We hold that appellant has affirmatively waived any objection to the admissibility of this evidence.

Because it is not crystal clear what appellant is arguing before this Court, we shall first address briefly the procedure entitling a defendant to a so-called *Franks* hearing attacking a search warrant. If appellant is arguing that he was entitled to a *Franks* hearing, his argument fails because he never met his burden entitling him to a hearing on the validity of the search and seizure warrant beyond the four corners of the warrant. Moreover, as we

16

shall explain *infra*, the record indicates that any *Franks* issue was resolved apparently during a chambers meeting, off the record, with the court and counsel.

As Judge Charles E. Moylan, Jr., explained cogently in *Fitzgerald v. State*, 153 Md. App. 601, 642, 837 A.2d 989, 1012 (2003), "a *Franks* hearing is a rare and extraordinary exception 1) that must be expressly requested and 2) that will not be indulged unless rigorous threshold requirements have been satisfied." The United States Supreme Court set out "a formal threshold procedure before a defendant will be permitted to stray beyond the 'four corners' of a warrant application to examine live witnesses in an effort to establish that a warrant application was tainted by perjury or reckless disregard of the truth." *Id.* at 643, 837 A.2d at 1012. Before a defendant may have a hearing, that defendant must make a substantial preliminary showing that the warrant affidavit included a false statement, made either knowingly and intentionally or with reckless disregard for the truth. *Id.*, 837 A.2d at 1012. For this showing, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. If such intentional or reckless falsity is established in a hearing, a court must find that the alleged false statement was necessary to the finding of probable cause in order to suppress evidence resulting from the warrant. *Id.* at 156. The Court of Appeals, in *McDonald v. State*, 347 Md. 452, 471, 701 A.2d 675, 684 n.11 (1997), explained as follows:

> "*Franks v. Delaware* set out a procedure, requiring a detailed proffer from the defense before the defendant is even entitled to a hearing to go behind the four corners of the warrant. Under *Franks*, when a defendant makes a substantial preliminary showing that the affiant intentionally or recklessly included

17

> false statements in the supporting affidavit for a search warrant, and that the affidavit without the false statement is insufficient to support a finding of probable cause, the defendant is then entitled to a hearing on the matter. The burden is on the defendant to establish knowing or reckless falsity by a preponderance of the evidence before the evidence will be suppressed. Negligence or innocent mistake resulting in false statements in the affidavit is not sufficient to establish the defendant's burden."

In the event that appellant is claiming he was entitled to a *Franks* hearing, he is wrong because his arguments fail to satisfy the threshold requirements to entitle him to such a hearing. First, he has not made a substantial preliminary showing that the affiant *intentionally or recklessly* included false statements in the supporting affidavit for the search warrant. In fact, he never even claims intentional or reckless falsehood, which is the entire basis for a *Franks* motion. Second, bare allegations in a motion without affidavits or the like are insufficient to satisfy the stringent threshold requirement which must be met before a defendant may go beyond the four corners of a warrant. Appellant offers no witness testimony or other evidence to claim that Detective Larbi's affidavit for the search warrant was knowingly or recklessly false. He speculates that the affidavit's evidence might be stale and merely disputes Detective Larbi's report of a confidential informant buying drugs from appellant.

Moreover, and dispositive of the issue, as reflected in the quoted colloquy, the record suggests that the parties resolved any *Franks* issue in chambers. It appears that all that remained on any pre-trial motion was a factual dispute between the State and appellant as to whether his arrest was lawful.

18

We turn to the remaining portion of appellant's motion: the legality of his arrest. There is no dispute that after the first day of trial and the parties' agreement to address the motion the next day, no one mentioned the outstanding motion again. There is no explanation on the record as to why defense counsel did not address the motion first thing the next morning. Most significantly, counsel did not object when the incriminating evidence, arguably the fruit of an illegal arrest, was introduced by the State into evidence.

Procedurally, appellant was entitled to a hearing on his motion to suppress fruits of an illegal arrest. The court offered him a hearing, but then agreed to defer the hearing to the next morning. While it was incumbent upon the court to address the motion and to hold a hearing, when the court failed to do so, it was incumbent upon defense counsel to raise the issue and bring it to the court's attention. Then, when the State offered the evidence, appellant remained silent. Maryland Rule 5-103(a)(1) allows an admission of evidence to be an appealable error only if "a timely objection or motion to strike appears of record." A contemporaneous objection to the admission of evidence is required. *Malarkey v. State*, 188 Md. App. 126, 156, 981 A.2d 675, 693 (2009). Here, there was no objection.

Counsel cannot stand silent and invite error. The right to a ruling on a pending motion "carries with it a commensurate responsibility [to bring the motion] to the attention of the trial court." *White v. State*, 23 Md. App. 151, 156, 326 A.2d 219, 222 (1974). Appellant had to remind the court if he still desired a hearing on his motion, because failing to object to a court's decision not to rule on a motion waives the right to appeal that motion. *Malarkey*, 188 Md. App. at 156, 981 A.2d at 693. In *Malarkey*, the judge explicitly

19

reserved on each of three motions for judgment of acquittal and never ruled on any of them. *Id.* at 155, 981 A.2d at 692–93. The defendant never objected or otherwise claimed an entitlement to a ruling on his motions, even as the case went to the jury. *Id.* at 155–56, 981 A.2d at 692–93. Like appellant, the defendant's failure to bring the question to the court's attention waived his right to appeal it. *Id.* at 156, 981 A.2d at 693.

Even if both the court and counsel erred, the deciding factor in this case is counsel's utter silence when the State introduced the incriminatory evidence, *i.e.*, the fruits of the search and the incriminatory statements. Appellant was beyond question required to make a contemporaneous objection when the State offered the evidence to "afford the trial court an opportunity to cure or correct the error."[6] *Malarkey*, 188 Md. App. at 157, 981 A.2d at 693. He failed to do so.

By failing to bring to the court's attention the failure to hold the hearing before commencement of trial, or even at any time during the trial, and, significantly, by failing to make a contemporaneous objection to the admission of the evidence when offered by the State, appellant has waived the failure to hold a hearing for our review.

V.

We remand for a new trial on the six charges that were affected by the error of excluding appellee's prescription evidence: possession of oxycodone with intent to

---

[6] In addition to appellant's failure to make a contemporaneous objection, any error by the trial court to hold a hearing was rendered harmless by appellant's failure to object when the incriminating evidence was introduced. *Davis v. State*, 8 Md. App. 327, 329 (1969).

distribute, possession of methadone with intent to distribute, possession of alprazolam with intent to distribute, possession of oxycodone, possession of methadone, and possession of alprazolam. We affirm the convictions for possession of heroin with intent to distribute and possession of heroin.

**JUDGMENTS OF CONVICTIONS FOR POSSESSION OF OXYCODONE WITH INTENT TO DISTRIBUTE, POSSESSION OF METHADONE WITH INTENT TO DISTRIBUTE, POSSESSION OF ALPRAZOLAM WITH INTENT TO DISTRIBUTE, POSSESSION OF OXYCODONE, POSSESSION OF METHADONE, AND POSSESSION OF ALPRAZOLAM IN THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASES REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION AND A NEW TRIAL ON THE SPECIFIED COUNTS. JUDGMENTS OF CONVICTIONS FOR POSSESSION OF HEROIN WITH INTENT TO DISTRIBUTE AND POSSESSION OF HEROIN AFFIRMED. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.**

21