FREDERICK S. MATTHEWS ᴇᴛ ᴀʟ. *vs.* J. B. COLT COMPANY.

*Action on Contract—Evidence of Signature—Instructions.*

On an issue as the genuineness of the purported signature of one of defendants upon the two contracts in suit, *held* that the testimony of two witnesses, present at the time, that one contract was signed for such defendant by her son, under authority then given him by her, and that of one witness that he saw such defendant sign the other contract, was sufficient to warrant the admission of the contracts in evidence.     pp. 671, 672

In an action for the price of a domestic gas generator, the refusal to allow plaintiff's salesman to answer a question whether he told defendants that the appliance could be placed even in a wet cellar was not prejudicial to defendants, since they could not have been benefited by a negative answer by the witness, and an affirmative answer would have added nothing to the uncontradicted evidence of one of defendants that the witness did make such a statement.                    p. 673

That an instruction given at plaintiff's request failed to submit the questions whether the contracts in suit were signed by one of defendants, or by her authority, and whether they were procured by fraud, *held* not to constitute reversible error as against the defendants, in view of the fact that these omissions were supplied by an instruction granted defendants, and in view of the further fact that the trial court, which decided the case upon the facts, granted both of such instructions, which were to govern it in reaching a conclusion upon the facts.

pp. 674, 675

In an action against a husband and wife on a contract, alleged to have been signed by both, for the purchase of a gas generator, it was proper to refuse an instruction that there could be no verdict against the defendants, naming them, if the wife did not sign the contract or authorize its signature, since this had no bearing on the husband's liability.                    p. 675

In an action for the price of a gas generator, *held* that a prayer that if the court, sitting as a jury, should find for the plaintiff, under the pleadings and evidence in the case, the verdict should be for a nominal amount only, was properly refused.                                  p. 675

*Decided June 20th, 1924.*

Appeal from the Circuit Court for Carroll County (FOR-SYTHE, J.).

Actions by the J. B. Colt Company against Frederick S. Matthews and Frances Matthews, his wife. From a judgment for plaintiff in each of the two actions, the defendants appeal. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*F. Neal Parke*, with whom were *James A. C. Bond* and *Edward H. Burke* on the brief, for the appellants.

*Edward O. Weant* and *Guy W. Steele*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from two judgments recovered by J. B. Colt Company, the appellee, against Frederick S. Matthews and Frances Matthews, his wife, the appellants. The suit in each case was brought on six common counts and one special count. In the first of these cases, the special count is as follows:

"That the defendants heretofore, to wit, on April 7th, 1921, by their contract in writing under seal undertook and did purchase from the plaintiff one carbide generator, Model 'N' fixtures, burners, globes, and supplies, and agreed to pay the plaintiff $302.50 therefor one year after date and agreed to give their promissory note for the amount thereof, and in the event of their failure to give said note, the full amount of the above mentioned contract price shall at once

> become and be due and payable, and that the defend-
> ants have failed to give said note and have repudi-
> ated the said contract although said chattels have
> been shipped to them in conformity with said contract,
> thereupon said debt became due and demandable, and
> that the plaintiff demanded it of the defendants and
> they have refused to pay the same."

The special count in the other case differs from the first only in the articles bought, and the aggregate amount to be paid therefor. The defendant, Frederick S. Matthews, pleaded *non assumpsit,* while the defendant, Frances Matthews, in addition to the general issue pleas, pleaded that neither she nor any one acting for her signed the contracts. There was a joinder of issue on the general issue pleas, and a replication, (1) that the defendant, Frances Matthews, signed the contracts; (2) that she authorized another to sign them for and on her behalf; and (3) that she ratified and confirmed the signing of them for her by another person, and adopted the signature thereto as her own. The defendant, Frances Matthews, joined issue on the first and second replications and traversed the allegations of ratification and adoption, contained in the third replication, upon which the plaintiff joined issue. The cases were then submitted to the court to be tried together by it, sitting as a jury. The court found for the plaintiff on both contracts, and assessed the damages at the contract prices, and upon each of said verdicts a judgment was thereafter entered. It is from these judgments that the appeal in this case is taken.

There are but four exceptions found in the record. Three of these relate to the evidence and one to the prayers.

The first and second exceptions are to the admission in evidence of the two written contracts upon which the special counts of the declarations, are based. As the contracts are practically the same, differing only in the articles bought, and the aggregate amount to be paid therefor, we will here state the material parts of the first contract only, which is as follows:

"J. B. Colt Company (hereinafter referred to as the company), April 7, 1921, 30 East 42nd Street, New York.

"Please ship the following generators and appliances f. o. b. factory or warehouse to Frederick S. Matthews, Stemmers Run, Baltimore County, Maryland.

(Here follows articles and prices.)

"In consideration of the acceptance by the company of this order the undersigned (hereinafter known as the purchaser) agrees to pay to the company three hundred and two dollars and 50 cents within one year from date of acceptance of this order. If said date of payment is subsequent to ninety days from date of acceptance of this order, the purchaser agrees to make, execute and deliver to the company forthwith upon notice of due acceptance, his or their promissory note in form prescribed by the company, for the amount aforesaid, and payable one year from date of acceptance of this order, no %

"Warranty: It is agreed that in accepting this order the company warrants the apparatus furnished to be a thoroughly durable galvanized steel acetylene generator, automatic in action, and of good material and workmanship, and that it is on the permitted list of the National Board of Fire Underwriters.

"In the event of the failure or refusal of the purchaser to execute and deliver to the company the promissory note above referred to at the time above stated, the full amount of the above mentioned contract price shall at once become and be due and payable.

"If the purchaser shall instruct the company not to ship the above described material, the company may at its option either hold the material for the purchaser or deliver the material to a common carrier consigned to the purchaser, and either action on the part of the company shall be considered a full performance of the contract by the company.

"This order shall become a contract between the purchaser and the company upon acceptance thereof in the space below by an officer or credit manager of said company at its office in New York, N. Y.; it being

understood that this instrument, upon such accept-
ance, covers all of the agreement between the pur-
chaser and the company, and that no agent or repre-
sentative of the company has made any statements,
representations or agreements, verbal or written, modi-
fying or adding to the terms and conditions herein
set forth.   It is further understood that upon the
acceptance of this order, the contract so made cannot
be cancelled, altered or modified by the purchaser or
by any agent of the company, or in any manner except
by agreement in writing between the purchaser and
the company acting by one of its officers.

"Payment shall be made only by check, draft or
promissory note drawn to the order of the company.

"The undersigned, herein called the purchaser, have
each jointly and severally executed this order as prin-
cipals and not as guarantors or sureties.

"Frasce (Frances) Matthews.  (Seal)'

"(Signature of wife) (Purchaser).

"Frederick S. Matthews.        .(Seal)

"(Signature of husband) (Purchaser).

"Accepted at New York, N. Y., 4/9/21.

"J. B. Colt Company,

"By C. C. Shepley,

"Credit Manager."

Mercer Porter, a resident of Baltimore County, who had
accompanied Abrams, an employee of the plaintiff, to pro-
cure orders for the sale of its goods, to the home of the de-
fendants on the occasion the contracts were said to have been
executed, testified that the defendant, Frederick S. Matthews,
after talking with Abrams about the purchase of the articles
mentioned in the contract, which were to be used in the de-
fendant's home, he, before signing the paper, called to his
wife, Frances Matthews, who was not at the time in the room
with them, and asked her "if she was satisfied," and she,
speaking from an adjoining room, as he thought, said "if
he was satisfied, go ahead."   He then said to her that "she
would have to sign the paper" for the purchase of the articles;
and she replied, "let the boy sign it."   The husband then

signed it for himself, and Frederick S. Matthews, Jr., her son, signed it for his mother, by putting her name thereto.

Abrams, to whom we have already referred as an employee of the plaintiff, when shown the contract, and when asked "whose signature is that," said "Mr. Matthews." He was then asked—his attention being directed to the other name appearing thereto—"Whose signature is that?" and he said, "the son's signature, for the mother, Mrs. Matthews." "Q. How came the son to write that name? Ans. Three of us were in there, Mrs. Matthews evidently must have been in the next room. ˎI told Mr. Matthews I couldn't take an order without both signatures. He called to Mrs. Matthews and said she had to sign it. She said, 'I can't come out.' She called to the son, and told him to sign it for her."

After the introduction of this evidence, the plaintiff offered the first contract in evidence and the court admitted it. This ruling of the court forms the basis of the first exception. Thereafter, as testified to by Abrams, he brought up with Frederick S. Matthews the question of his purchasing a plant for his son John, whose home nearby was the property of the defendants, and Abrams, with Frederick S. Matthews, Jr., went to the home of John and there inspected the premises and made an estimate of the cost of the plant to be used there. Abrams with the two sons then returned to the home of the elder Matthews, and there, Abrams says, Frederick S. Matthews signed the contract for the son's home. He was then asked who signed Mrs. Frances Matthews' name, which appeared thereto, and he replied, "She signed·it herself"; that she signed it in the kitchen of her home and that he saw her sign it. It was then that the contract was offered and admitted in evidence by the court. This ruling of the court forms the second exception.

The evidence of Porter and of Abrams, who heard the mother authorize· the son to sign the first contract for her, and who saw him sign it, and Abrams, who testified that he not only saw Mrs. Matthews sign the second contract, but· stated where she signed it, was, we think, sufficient to warrant the admission of the contract in evidence.

The third exception is to the ruling of the court in not allowing the witness Abrams to answer the following question: "Did you tell them (meaning the defendants), in response to their questions, that you could put the plant anywhere and that their wet cellar made no difference in the safety of the plant?"

While the witness was not allowed to answer this question, the defendant Frederick S. Matthews was thereafter permitted to testify without objection that he was told by Abrams that he could put the plant anywhere, "You can put it down the cellar." "I said, 'My cellar is wet, water gets in there and everything freezes in there. * * * Water gets in there two or three feet if you leave it.' He said, 'That don't make any difference, you can put that on a float.' We believed him."

This evidence went to the jury uncontradicted. What Abrams' reply to the question asked him would have been, had he been permitted to answer it, is, of course, unknown. If he had denied telling Matthews that which he was asked, the defendant would certainly not have been benefited by the answer, and had he answered the question in the affirmative, saying that he had so told Matthews, it would have added nothing to the uncontradicted evidence of the defendant above set out and therefore, if the court erred in its ruling, it was not, we think, prejudicial to the defendants and consequently not a reversible error.

The plaintiff's first and defendants' third prayer were granted, while the plaintiff's second and defendants' first, second and fourth prayers were rejected.

By the plaintiff's first prayer the court declared the law applicable to the case to be, that if the court, sitting as a jury, "shall find from all the evidence in this case that the defendants purchased from the plaintiff two acetylene generators and fixtures under the contracts of sale offered in evidence and that thereafter the plaintiff delivered said generators so purchased to the defendants free on board Chicago, and if it further find that thereafter the defendants refused to give

notes for the purchase price of said generators and fixtures or pay for the same then its verdict must be for the plaintiff for the amount of the purchase price thereof, with interest in the discretion of the court sitting as a jury from April 9, 1922"; and by the defendants' third prayer the court, sitting as a jury, was told that should it "find that the defendants signed, or authorized the signing, of the order offered in evidence and sued on in this case, then in determining whether or not the defendants' signatures to the instrument sued on were procured by fraud, it is to consider all the circumstances surrounding the signing of the same by the defendants as detailed in evidence, and all the other evidence in this case; and if the court, sitting as a jury, find from all the evidence that the agent of the plaintiff represented to the defendants at the time of the sale of the lighting plant to the defendants that it was safe to install said lighting plant in the cellar of the house of the defendants, although it was frequently flooded by water, and that it required no protection against freezing; and if the court sitting as a jury, shall further find that it was not safe to install said lighting plant in the cellar of the defendants, and that it was necessary for said plant to be protected against freezing, then the court, sitting as a jury, may infer from these facts and the other evidence in the case that defendants' signatures to the order sued on were procured by fraud, and if the court, sitting as a jury, so find, its verdict should be for the defendants."

The plaintiff's granted prayer may be deficient when considered alone, because of its failure to submit to the court, sitting as a jury, for its finding, the two following questions, (1) Whether the defendants, or the one sought to be charged, signed, or authorized another to sign for them, the alleged written contracts, (2) Whether the execution of said agreements was procured by the fraud of the plaintiff's agent; but as these omissions are supplied by the instruction granted the defendants, the plaintiff's prayer, when considered in connection with it, cannot properly be held bad to the extent of saying that the granting of it was a reversible error, especially in view of the fact that the court, which decided the

case upon the facts, granted both of said instructions, which were to govern *it* in reaching a conclusion upon the facts. *Hochschild, Kohn & Co.* v. *Cecil*, 131 Md. 70, 78; *Woodward* v. *Tyng*, 123 Md. 98, 119; *Gill* v. *Staylor*, 93 Md. 453, 471.

The defendants' first and second prayers, one offered in relation to the first contract and the other in relation to the second contract, each contained the instruction that if it was shown that the wife did not sign the contract or authorize another to sign it for her, then there could be no verdict for the plaintiff "against the defendants Frederick S. Matthews and Frances Matthews, his wife." The prayer is correct in stating that a verdict upon such finding could not be properly rendered against both the husband and the wife, as the wife under such facts and circumstances would not be liable, but it was not so with the husband. Whether or not the wife signed the contract, or authorized another to sign it for her, could in no way affect him, therefore he should not have been involved in the effect of such finding. Consequently, the prayers were objectionable in form and were properly rejected.

The court was asked by the fourth prayer of the defendants to instruct itself, sitting as a jury, that should it find for the plaintiff, under the pleadings and evidence in the case, the verdict should be for a nominal amount only.

The two granted prayers, one to the plaintiff and the other to the defendants, we think, sufficiently present the law of this case, and we find no error in the ruling of the court in the rejection of the defendants' fourth prayer; and as we discover no reversible errors in any of the rulings of the court, the judgments appealed from will be affirmed.

*Judgments affirmed, with costs to the appellee.*