*State of Maryland v. Steven Young*, No. 2, September Term, 2018, Opinion by Adkins, J.

**PRESERVATION FOR APPELLATE REVIEW – MOTION *IN LIMINE* – AUTHENTICATION:** The Court of Appeals held that, where a party merely references Maryland Rule 5-803(b)(6), the business records exception to the rule against hearsay, the party does not preserve an objection to the other party's ability to authenticate the evidence if admitted under a different hearsay exception or exemption. Therefore, the State's objection to the admissibility of the prescription evidence was not preserved for review.

**PRESERVATION FOR APPELLATE REVIEW – MOTION *IN LIMINE* – OPORTUNITY FOR OBJECTION – MARYLAND RULES 8-131 AND 4-323:** Maryland Rule 8-131 generally prevents appellate courts from reviewing issues not raised in the trial court. But when a party has no opportunity to object before a ruling is made, Maryland Rule 4-323(c) provides that "the absence of an objection at that time does not constitute waiver of the objection." Here, the defendant had no opportunity to object to the trial court's motion *in limine* ruling regarding the admissibility of prescription evidence. Thus, the Court of Appeals held that the trial court's motion *in limine* ruling was preserved for review.

**EVIDENCE – EXCLUSION OF EVIDENCE – HEARSAY – NON-HEARSAY "VERBAL ACTS" – PRESCRIPTIONS – POSSESSION OF CONTROLLED DANGEROUS SUBSTANCES:** Defendants charged with possession of controlled dangerous substances under Maryland Code (2002, 2012 Repl. Vol), §§ 5-601 and 5-602(2) of the Criminal Law Article ("CR") are entitled to offer prescriptions to establish part of the affirmative defense for possession established by the statute, so long as the prescription can be authenticated. Admission of the prescription to prove the operative fact of the prescription's existence is not hearsay, but a legally operative verbal act. Therefore, the Court of Appeals held that the prescriptions would have been admissible as non-hearsay if offered to establish the "prescription" prong of the affirmative defense.

Circuit Court for Baltimore City
Case No.: 114169016
Argued: September 6, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 2

September Term, 2018

STATE OF MARYLAND

v.

STEVEN YOUNG

Barbera, C.J.
Greene
*Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: December 18, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Md. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.

Suzanne C. Johnson, Clerk

"The true nature of the hearsay rule is nowhere better illustrated and emphasized than in those cases which fall outside the scope of its prohibition." 6 John Henry Wigmore, *Evidence in Trials at Common Law* § 1766, at 250 (Chadbourn rev. 1976). Steven Young was convicted by a jury in the Circuit Court for Baltimore City of possession and possession with intent to distribute controlled dangerous substances. Before trial, the State filed a motion to suppress introduction of any supposed prescriptions for controlled substances, which the Circuit Court granted on hearsay grounds. We consider whether the alleged prescriptions are barred by the rule against hearsay, or if instead, they are non-hearsay and admissible as a "verbal act."

## BACKGROUND

In May 2014, Detective Manuel Larbi ("Larbi") and a team of officers executed a search warrant for 2580 Marbourne Avenue in Baltimore, Maryland. Larbi observed Steven Young and another male in front of the house. The officers handcuffed both individuals and entered the residence. Once inside, the officers observed a third individual, Angela Grubber, later identified as Young's wife. After Larbi read Young his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Young advised that he had controlled dangerous substances in the bedroom. Larbi went into the bedroom and found 32 pills of methadone, 3.5 grams of heroin, seven Xanax pills, and "a digital scale containing a powder substance." In the kitchen cabinet, Larbi recovered 342 OxyContin pills, ten gel caps containing suspected heroin, and $1,498 in cash.

Young was arrested and charged with illegal possession of controlled substances and possession with intent to distribute controlled substances. Young filed a motion to

suppress evidence of these drugs, asserting that he "attempted to provide [prescriptions] to police during the incident, and explained that he [had] valid prescriptions for [m]ethadone, Xanax, and Percocet." Young also claimed he had "shown that his wife had valid prescriptions for [m]ethadone, Xanax, and Percocet." He did not attach copies of the prescriptions to the motion or otherwise provide specific information about them.

Young's trial in the Circuit Court began in January 2016. Before jury selection, the parties met with the trial judge in chambers. No record of the conversation was made. Upon returning to the courtroom, the prosecutor moved to exclude all evidence that Young had a prescription for the drugs seized. The court granted this motion *in limine*, without providing Young an opportunity to respond:

> [PROSECUTOR]: And, Your Honor, the State's second motion that we spoke in chambers is the exclusion. State's moving a motion *in limine* to exclude any prescription evidence as it is, number one, hearsay, and, number two, not admissible hearsay because it does not fall within the exception of [Maryland Rule] 803[(b)](6).
>
> Defense is trying to enter into evidence, number one, a prescription -- an alleged prescription of the defendant and, number two, a prescription by his wife, Angela Grubber, who is not going to testify today. These are copies of alleged prescriptions. They are not certified. The doctor is not present. There's no certification or authenticity and it's excluded under [Maryland Rule] 803[(b)](6). I do have a case, *Bryant v. State*, [129 Md. App. 690 (2000),] by the Court of Special Appeals where in a murder trial the defense tried to enter in a piece of paper that was the alleged toxicology report because it was murder. And the Court said it's hearsay, number one, even if the defendant took the stand --
>
> THE COURT: Yeah. I'm familiar with that law because I had the very same issues several times. Okay. That motion is granted.

2

Defense counsel did not respond, object, or make a proffer in response. The case proceeded to trial.[1]

During its case-in-chief, the State called Detective Larbi, who was accepted as an expert in the field of narcotics identification and packaging. Larbi testified that, in his expert opinion, the substances, scale, and currency recovered were for distribution, not personal use. The detective recalled that during one conversation, "Mr. Young also stated that he does sell from time to time," and that aside from four pills that were recovered, Young took ownership of all the other drugs at the house. Larbi also testified that Young never claimed to have a prescription for the drugs.

The jury convicted Young of eight counts: possession of heroin, oxycodone, methadone, and alprazolam; and possession with intent to distribute heroin, oxycodone, methadone, and alprazolam. After merging the possession charges, the trial judge sentenced Young to multiple years of imprisonment for the four counts of possession with intent to distribute.

Young timely appealed to the Court of Special Appeals, which affirmed in part and reversed in part. *See Young v. State*, 234 Md. App. 720 (2017). The intermediate appellate court held that "[v]alid prescriptions provide the basis of a statutory defense to the charges for possession of and possession with intent to distribute methadone, alprazolam, and oxycodone. Introducing them for such purpose, when properly authenticated, is not hearsay." *Id.* at 736.

---

[1] The Circuit Court for Baltimore City never ruled on Steven Young's motion to suppress. The Court of Special Appeals held this issue was not preserved, and Young does not challenge that holding here.

3

As a result, it reversed each of Young's convictions, except for his two convictions for possession of heroin and possession with intent to distribute heroin. *See id.* at 741.

## DISCUSSION

## 1. Preservation

We first address two preservation issues: (1) Young's claim that the State failed to preserve the issue of whether he authenticated the alleged prescriptions; and (2) the State's claim that Young failed to preserve his claim that the trial court erred in excluding the alleged prescriptions.

*Young's Preservation Argument—Authentication*

Young argues that the State failed to raise the issue of authentication at trial and therefore cannot raise that issue on appeal. He maintains that the State's sole reference to authentication was in the context of its business records argument. This reference is insufficient, Young continues, because the prescriptions are not hearsay, and no exception is needed to properly admit them. Young further asserts that because he could self-authenticate the prescriptions, neither the physician nor her records custodian need testify.

The State responds that the prosecutor raised the issue of authentication in five ways. First, the prosecutor argued that there was no "authenticity"—meaning authentication. Second, by referring to the "alleged prescriptions," the prosecutor asserted that they were not genuine. Third, the prosecutor argued that "there's no certification," meaning that the prescriptions were not admissible without a sponsoring witness who could establish that they were authentic. Fourth, the prosecutor pointed out that "Young's wife is not going to testify today" and "the doctor is not present," meaning that Young was not

4

calling witnesses who could potentially sponsor and authenticate the prescriptions. Finally, the prosecutor cited *Bryant v. State*, 129 Md. App. 690 (2000), in which the only issue on appeal was authentication.

We reject the State's arguments that it challenged authentication at trial because we do not ascribe the same meaning to the prosecutor's statements. Rather, the prosecutor clearly spelled out her reasons for excluding the prescription evidence, and they all clearly focused on challenging the prescriptions as inadmissible hearsay. Specifically, the prosecutor made her motion *in limine* "to exclude any prescription evidence as it is, number one, hearsay, and number two, not admissible hearsay because it does not fall within the exception of [Md. Rule 5-803(b)(6)]," the business records exception. Nor was the prosecutor's citation to *Bryant v. State* supportive, as *Bryant* involved the question of whether "the trial court err[ed] in admitting the results of a toxicology report into evidence as a business record," and the authentication issue wholly related to the document's admission and authentication as a business record. Finally, simply naming absent witnesses was not sufficient to preserve the State's objection, because Young could potentially authenticate the prescriptions through his own testimony. The trial court granted the motion *in limine* without giving the defense any chance to proffer or authenticate the alleged prescriptions.[2]

---

[2] We have no knowledge of what happened in the off-the-record chambers discussion between the trial judge and counsel.

5

*State's Waiver Argument—Exclusion of Prescriptions*

The State argues that Young failed to preserve his claim that the trial court erred in excluding the alleged prescriptions. It contends that where a prosecutor has presented two independently dispositive reasons why the trial court should not take an action, and the court relies on those reasons, it is incumbent on a defendant to object or demonstrate why the prosecutor's arguments are not dispositive.

Young responds that the trial court was on notice of his position based on the crimes charged and his motion to suppress. Further, he contends that the court's ruling makes clear it was aware that he intended to introduce the prescriptions into evidence. As to the State's remaining argument, Young asserts that he did not have an opportunity to object to the ruling—the court granted the motion to exclude before the State finished its argument, and the court moved to the next motion without giving Young a chance to respond.

Under Maryland Rule 8-131(a), an appellate court will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court . . . ." To preserve an issue for appeal, Maryland Rule 4-323(a) requires a party to "object[] to the admission of evidence . . . at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent," or the objection is waived. Maryland Rule 4-323(c) tempers strict application of this requirement, making clear that a proffer is not the only way a party may preserve an issue for appeal. The party need only "make[] known to the court the action that the party desires the court to take or the objection to the action of the court." Md. Rule 4-323(c). Moreover, "[i]f a party has no opportunity to object to a

6

ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection." *Id.*

Based on the record below—Young's motion to suppress, the prosecutor's reference to the discussion in chambers, the prosecutor's motion *in limine*, and the judge's subsequent ruling—we are satisfied that the judge had sufficient notice of Young's intention to introduce the prescriptions into evidence, and that the judge's ruling excluding them was intended to be the "final word on the matter . . . ." *See Prout v. State*, 311 Md. 348, 357 (1988) (applying current Rule 4-323(c)). Additionally, although Young did not respond or object to the State's motion *in limine*, he had "no opportunity" to do so. Md. Rule 5-323(c). Before the prosecutor finished making her argument, the trial judge cut her off midsentence and granted her motion. For these reasons, we hold that Young's objection to the trial court's motion *in limine* ruling is preserved for review.

## 2. Hearsay

The State also argues that the alleged prescriptions are inadmissible hearsay because they would be introduced to prove the truth of the matter asserted. The State presents two iterations of this theory. First, it reasons, the prescriptions go directly to the truth of the matter asserted. The State construes the word "prescription" in Md. Code (2002, 2012 Repl. Vol), § 5-601 of the Criminal Law Article ("CR")[3] to mean "valid prescription," which necessarily means that it was also "from an authorized provider" and that the

---

[3] The parties also contest whether prescriptions are admissible non-hearsay evidence under Md. Code (2002, 2012 Repl. Vol.), § 5-602 of the Criminal Law Article ("CR"). We address this issue separately later.

provider was "operating in the course of professional practice." When a doctor writes a prescription, the State contends, she is essentially asserting that "she has the authority to issue a prescription to the patient in order to obtain a controlled substance," or that the patient is permitted to possess the controlled substance. Second, citing *Stoddard v. State*, 389 Md. 681 (2005), the State avers that even if the prescriptions do not explicitly state the information described above, they should still be excluded as hearsay because they are "implied assertions" inherent in the admission of the prescription.

Young counters that the prescriptions were not offered to prove the truth of the matter asserted within them. Rather, he says he sought to introduce the prescriptions as the basis for the statutory defense that he "legally possessed certain of the controlled substances." He argues that a prescription is a "legally operative document" and that CR § 5-601 "only applies to drugs *not* obtained by valid prescription and does *not* require that the prescription be appropriate for the patient's medical condition" or that the patient in fact suffer from a given medical condition. Instead, says Young, legitimacy and authorization are authentication questions "irrelevant to the hearsay analysis." For these reasons, he argues, the trial court erred in ruling that the prescriptions were hearsay.[4]

A trial court's ruling on the admissibility of evidence is generally reviewed for abuse of discretion. *See Hopkins v. State*, 352 Md. 146, 158 (1998). Yet, appellate review of whether a statement is hearsay is conducted without deference to the trial court. *See*

---

[4] Alternatively, even if the prescriptions were hearsay, Young claims that they fall under the "statements made for the purposes of medical treatment" exception.

8

*Bernadyn v. State*, 390 Md. 1, 8 (2005) (trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c). There are two threshold questions when a hearsay objection is raised: "(1) whether the declaration at issue is a 'statement,' and (2) whether it is offered for the truth of the matter asserted. If the declaration is not a statement, or if it is not offered for the truth of the matter asserted, it is not hearsay and it will not be excluded under the hearsay rule." *Stoddard*, 389 Md. at 688–89. Maryland Rule 5-801(a) defines a "statement" as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." The parties do not contest that a prescription is an out-of-court statement—a written assertion. They focus instead on whether the prescriptions are offered for the truth of the matter asserted.

It is hornbook law that out-of-court statements are generally not admissible to prove the truth of the matter asserted. Yet, they can be admitted if the statements are "relevant and proffered not to establish the truth of the matter asserted therein, but simply to establish that the statement was made[.]" *Lunsford v. Bd. of Educ. of Prince George's Cty.*, 280 Md. 665, 670 (1977) (citations omitted). This depends on whether the "fact asserted in the out-of-court statement [must be] sincerely and accurately stated[] in order for the out-of-court statement to help to prove what it is offered to prove[.]" 6A Lynn McLain, *Maryland Evidence State and Federal* § 801:7, at 235 (3d ed. 2013).

9

In most state and federal courts, this hearsay analysis is cabined to intentional assertions. This is significant because, in other jurisdictions, if the assertion was unintentional or merely implicit, then it cannot be hearsay. Maryland departs from this general rule. This departure is best explained by *Stoddard v. State*, 389 Md. 681 (2005), the seminal Maryland case on implied assertion. The primary question in *Stoddard* was whether out-of-court statements are hearsay when offered to prove the truth of a factual proposition that was only implicitly—often unintentionally—communicated by the declarant. *See id.* at 689.

In *Stoddard*, the defendant, Erik Stoddard, was convicted of second-degree murder and child abuse resulting in the death of three-year-old Calen DiRubbo ("Calen"). *Id.* at 683. Stoddard was the only adult supervising Calen, her older brother, and her cousin, Jasmine Pritchett ("Jasmine"), for at least part of the time leading up to Calen's death. *Id.* at 684. The central issue involved the testimony of Jasmine's mother, Jennifer Pritchett. *Id.* Over defense counsel's objection, the court admitted the mother's testimony that Jasmine asked her "if [Stoddard] was going to get her." *Id.* at 685. The prosecutor offered this as evidence that Jasmine witnessed Stoddard commit the murder. *Id.* at 683.

On appeal, Stoddard argued that Jasmine's utterance was hearsay because it was both a statement and offered for the truth of the matter asserted. *Id.* at 687–88. First, the Court determined that an implied assertion is, in fact, a statement, even though unintentionally made. To justify this, we compared the Maryland Rules to the Federal Rules of Evidence. *See id.* at 693–96. Most courts have adopted the Committee note to the Federal Rules, which provides that "nothing is an assertion unless intended to be one."

10

Fed. R. Evid. 801(a). Yet, we have not. Instead, we observed the "Committee note to Md. Rule 5-801 departs substantially from its federal counterpart. Rather than restricting the definition of 'assertion,' the note does not attempt to define 'assertion' . . . ." *Stoddard*, 389 Md. at 696. From this, we explained, "[i]t is clear that in adopting the Maryland Rule, this Court did not intend to adopt the federal Advisory Committee's view that 'nothing is an assertion unless intended to be one,'" but rather intended to leave it to the development of case law. *Id.* Ultimately, the Court concluded that a verbal or written statement, even if unintentional, is still a statement under Maryland law.

The *Stoddard* Court proceeded to evaluate whether Jasmine's question was offered for the truth of the matter asserted within it, turning to the wellspring of implied assertion doctrine, *Wright v. Doe d. Tatham* (1837) 112 Eng. Rep. 488; 7 Ad. & E. 313. In *Wright*, a testator left his estate to his steward, Wright. The testator's heir at law, Tatham, filed suit to set aside the will, arguing that the testator was mentally incompetent at the time he made the will. *Id.* at 493; 7 Ad. & E. at 324. In response, Wright introduced several letters addressed to the testator, not for their truth, but so the court could infer from their content that the writers believed the testator was competent. *Id.* at 493–94; 7 Ad. & E. at 325. None of the individuals who wrote the letters testified at trial.

The English court ruled that the letters were hearsay, *id.* at 500; 7 Ad. & E. at 341, and we adopted its reasoning. First, the letters could not have been admitted for the truth of their literal content, because their content was not relevant to the proceeding. The letters were only valuable inasmuch as the "tone and content impl[ied] a belief in [the testator's] competence[.]" *Stoddard*, 389 Md. at 692. "Thus, as offered, these letters express[ed] the

11

proposition that [the testator] [was] competent[.]" *Id.* A letter stating as much would clearly be hearsay. Therefore, the Court concluded that the implied assertion doctrine excludes such evidence as hearsay "where a declarant's out-of-court words imply a belief in the truth of *X*, . . . [and are] offered to prove that *X* is true." *Id.*

Like in *Wright*, Jasmine's statement would not have been relevant were it offered for the literal truth of the question, "Is [Stoddard] going to get me?" *Id.* at 689. Nor was Jasmine's ability to speak the words otherwise relevant. *See id.* Rather, her question was only relevant if offered for its implicit meaning: "that, by asking it, Jasmine may have revealed, by implication, a belief that she had witnessed [Stoddard] assaulting Calen." *Id.* Even if a declarant possesses no intent to assert anything, "[i]t 'is a *non sequitur* to conclude from this, as the Advisory Committee [did], that the remaining dangers of perception, memory, and ambiguity are automatically minimized with this assurance of sincerity.'" *Id.* at 699 (citations omitted). The State offered the question to prove the truth of the implied factual proposition that Jasmine had in fact witnessed Stoddard assaulting Calen. "[W]here the probative value of words, as offered, depends on the declarant having communicated a factual proposition, the words constitute an 'assertion' of that proposition," and are offered for the truth of the matter asserted, or implied. *Id.* at 703–04. Accordingly, Jasmine's unintentional assertion was hearsay and should have been excluded.

12

Since *Stoddard*, we have consistently resisted an overbroad interpretation of its holding. In its companion case, authored by the same judge[5] and published on the same date, the Court upheld a trial court's decision to exclude a medical bill as hearsay, but gave cautionary advice for future cases. *See Bernadyn v. State*, 390 Md. 1 (2005). There, a sheriff's deputy conducted a valid search of a residence. *See id.* at 3–4. When the officer entered, the defendant ("Bernadyn") was in the living room with a marijuana pipe and marijuana stems and seeds. *Id.* at 4. While in the residence, the officer seized a medical bill addressed to "Michael Bernadyn, Jr., 2024 Morgan Street, Edgewood, Maryland 21040"—the address searched. *Id.*

Over a defense hearsay objection, the trial court allowed the deputy to testify that he had seized the medical bill from 2024 Morgan Street. *Id.* Counsel appealed to this Court. *Id.* at 7. Although we upheld the judge's decision to exclude the bill, we found it significant that the "State did not argue simply that an item bearing Bernadyn's name was found in the house and that Bernadyn probably resided at the house." *Id.* at 11. Instead, the State argued that the bill itself was "a piece of evidence that shows who lives there." *Id.* According to the State's proffered use, the bill was an implied assertion offered for the truth of the statement that the doctor's office who sent the bill was asserting that Bernadyn lived at the address. In highlighting this distinction, the Court curtailed *Stoddard's* impact

---

[5] Judge Irma Raker, the author of *Stoddard v. State*, 389 Md. 681 (2005), and *Bernadyn v. State*, 390 Md. 1 (2005), also wrote for the Majority in the current case, sitting by designation on the Court of Special Appeals.

with its seeming approval of an alternate theory favoring admission—offering the statement as "merely probative circumstantial evidence."

We continued to limit *Stoddard* in *Garner v. State*, 414 Md. 372 (2010). There we resolved the issue of whether circumstantial evidence probative of a fact that does not rely on the declarant's implied assertion can be admissible—picking up directly where *Bernadyn* left off. *Id.* at 374. *Garner* involved a phone call to the defendant's number by someone who asked: "Yo, can I get a 40?," which referred to $40 worth of cocaine. *Id.* at 376. An officer answered the phone, heard the unidentified caller make the request, and then later repeated the statement at trial. *Id.* at 376–77. Of course, Garner objected— claiming the testimony was hearsay, and arguing it was an implied assertion and inadmissible under *Stoddard* and *Bernadyn*. *Id.* at 381.

This Court held that the question, "Yo, can I get a 40?," was not hearsay, because it was a verbal act and should have been admitted into evidence. *See id.* at 388 ("[T]he rule against hearsay does not operate to exclude evidence of [a] 'verbal act' that established a consequential fact[.]"). As Judge Joseph Murphy pointed out, "neither *Stoddard* nor *Bernadyn* presented the issue of whether the 'verbal part of an act'" or an out-of-court statement "that constitutes circumstantial evidence of the declarant's state of mind" are subject to exclusion as hearsay. *Id.* at 381. Accordingly, we characterized the statement in two different ways. First, we said that it was admissible as a "verbal part of an act"—in that case, an offer. We explained that "[t]he making of a wager or the purchase of a drug, legally or illegally, is a form of contract." *Id.* at 382 (citing *Little v. State*, 204 Md. 518, 522–23 (1954)). Therefore, the anonymous caller's statement had legal significance (i.e.,

14

to prove the existence of a contract), regardless of whether the matter asserted was true. Alternatively, the Court concluded that the statements were non-hearsay circumstantial evidence of declarant's state of mind. *Id.* at 381–82. Under either rationale, the "telephoned words of the would-be bettor" were not hearsay.

We rejected the argument that the telephoned statements were an implied assertion, even though assertions may be implicit within them. "While there may be an 'implied assertion' in almost any question, . . . the only assertion implied in the anonymous caller's question was the assertion that the caller had the funds to purchase the drugs . . . ." *Id.* at 388. We declined to adopt the dissenting view of then-Chief Judge Bell, who would have interpreted the implied assertion as hearsay—a statement that Garner was selling drugs. *See id.* at 414 (Bell, C.J., dissenting). Instead, we reinforced *Stoddard's* boundaries.

*Garner* demonstrates that the *Stoddard* holding does not foreclose legally operative verbal acts from being admitted as non-hearsay, even if they contain an implied assertion. Professor Lynn McClain, in her treatise, *Maryland Evidence State and Federal*, summarizes the verbal acts doctrine as follows:

> The substantive law gives certain types of out-of-court statements immediate legal consequences. Such statements are termed "verbal acts" and are nonhearsay, because they have relevance even if the declarant was insincere or inaccurate. Most categories of verbal acts are *necessary* to the creation of certain types of claims, charges, and defenses.

McLain, *supra*, § 801:9, at 240 (footnote omitted) (emphasis in original). *See also* Wigmore, *supra*, § 1770, at 259 ("Where the *utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings*, their utterances may

15

be proved without violation of the hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein.") (emphasis in original).

*Garner* is hardly the first Maryland decision to apply the verbal acts doctrine. The Court of Special Appeals has recognized that verbal acts are non-hearsay when introduced as an element of a claim or defense. In *Banks v. State*, 92 Md. App. 422 (1992), the State sought to introduce testimony from the victim's mother reporting her son's statement that Defendant was, *inter alia*, "trying to hit him with a sickle" and "was tired of the arguing [with Defendant] and . . . was just ready to go." *Id.* at 430. The State argued that these statements established the victim's fear and tendency to avoid conflict, which were relevant to rebut the Defendant's battered spouse syndrome defense and establish the State's murder and manslaughter charges. *Id.* The Court recognized that verbal acts are admissible when they establish the basis of a claim or defense. But in this circumstance, "[n]either fear nor conflict avoidance . . . [had] any legal significance in establishing the elements of murder or manslaughter," nor were they "relevant in rebutting evidence of battered spouse syndrome or self-defense or hot-blooded provocation." *Id.* at 433. Hence, these statements were not admissible as verbal acts. *Id.* at 434.

Maryland courts have applied the verbal acts doctrine in various other circumstances, as well. *See, e.g.*, *Hyatt v. Romero*, 190 Md. 500, 505 (1948) (lease is admissible to prove the terms of a tenancy implied by law); *Carozza v. Williams*, 190 Md. 143, 150 (1948) ("'Rejection' of unsatisfactory materials . . . and other statements accompanying, and relating to, the performance of duties . . . are not hearsay but are verbal acts . . . ."); *Heil v. Zahn*, 187 Md. 603, 607–08 (1947) (in suit against the executor of an

16

estate, decedent's will was admissible because it was "not offered as testimony from the testator that he did not owe the amount claimed but merely to show the fact that by his will he made a bequest to the plaintiff-appellant"); *Travelers Ins. Co. v. Needle*, 171 Md. 517, 518–19 (1937) (although a proof of loss cannot be offered to show the fact or the extent of the plaintiff's loss or disability, it is one of the "necessary elements" in an insurance case that is admissible to show that proofs of loss or proofs of disability or death have been submitted to the insurer); *Catalano v. Bopst*, 166 Md. 91, 100–01 (1934) (letter memorializing terms of contract admissible to establish parties' intent as to the meaning of ambiguous word in breach of contract action); *Fair v. State*, 198 Md. App. 1, 37 (2011) ("[T]reating the writing on the check as a verbal part of the act of issuing the check, we are persuaded that the check was merely circumstantial non-assertive crime scene evidence.").

To review, the State argues that the prescription evidence, had it been admitted, would have been offered for the truth of the matter explicitly or implicitly asserted by it. Young believes the evidence could have been offered for a non-hearsay purpose, such as a verbal act. Given how events unfolded in the trial court, we lack a substantial amount of relevant information regarding the prescriptions. We do not know what specific information was included in the supposed prescriptions. Nor do we know the exact purpose for which they would have been offered. As we discussed, Young was not afforded an opportunity to object, let alone proffer his means of authentication or an explanation on the record regarding how he planned to use the prescription evidence. For these reasons, we need only decide whether the prescriptions could have conceivably been admitted for a non-hearsay purpose.

Young was charged under CR § 5-601(a)(1), which provides that a person may not "possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice[.]" Thus, the subsection creates a statutory defense for possession, so long as the substance is obtained: (1) directly or by prescription or order; (2) from an authorized provider; and (3) from a provider acting in the course of professional practice. A prescription is a necessary element of the statutory defense under CR § 5-601(a). As discussed above, evidence offered for the limited purpose of establishing an element of a claim or defense can be a verbal act, and not hearsay.

Relying in part on legislative history, the State contends that the word "prescription," as used in the statute, means "valid prescription." It points out that CR § 5-601 was derived from former Art. 27, § 287, which once included reference to "valid" prescriptions. *See* Revisor's Notes; 2002 Md. Laws ch. 26 at 423. The reference to "valid" prescriptions was ultimately deleted because it was "implicit in the reference to a 'prescription' **from an authorized provider**." *Id.* (emphasis added). Therefore, the State insists, to introduce a prescription is to necessarily assert that the individual suffers from a condition for which he needs the prescription or that the doctor is authorized to provide it. We disagree. The Revisor's Notes only demonstrate that the "authorized provider" prong of the statutory defense—one of three prongs discussed above—implies validity. But the prescription would not necessarily have been introduced to satisfy this element of the defense. We explain.

18

The *Garner* rationale is instructive. If the "making of a wager or **purchase of a drug**, **legally or illegally**, is a form of contract," and admissible non-hearsay, *Garner*, 414 Md. at 382 (emphasis added), so too is a paper entitling an individual to legally purchase the drugs. The prescriptions could be admitted as a verbal act demonstrating something, similar to a contract or lease, that is "necessary to the creation of certain types of claims, charges, and defenses," McLain, *supra*, § 801:9, at 240, not the truth of the matter asserted.

We have recognized that many statements can have both hearsay and non-hearsay uses. We conclude that introducing the alleged prescriptions to establish a statutory defense is a verbal act because the statute creates legal rights, and the fact of prescription is relevant regardless of whether its particular components are "true." *Cf. United States v. Davis*, 596 F.3d 852, 857 (D.C. Cir. 2010) ("It would make no sense to ask whether the money order was true. [The money order] [']is, by its nature, neither true nor false and thus cannot be offered for its truth.'" (internal citation omitted)). But this does not mean that Young has successfully or convincingly established his affirmative defense. The ultimate question of whether the prescription is from an authorized provider acting in the course of professional practice remains a question of fact for the jury to resolve. But offering a prescription to prove the operative fact of the prescription's existence would not

19

have been hearsay.[6]  And that is all we must decide regarding the possession charges.[7]

Because the trial court erred in granting the motion *in limine*, we shall affirm the Court of

Special Appeals and remand for a new trial on the specified possession charges, as we

explain *infra*.

But the State perseveres, pointing out that Young was also charged under CR § 5-

602 for possession with intent to distribute.  It explains that, while CR § 5-601 specifically

applies only to drugs not obtained by prescription, CR § 5-602 contains no such enumerated

limitation.  This section provides that, "except as otherwise provided" in Title 5, "a person

may not (1) distribute or dispense a controlled dangerous substance; or (2) possess a

---

[6] Other jurisdictions have also held that prescription evidence does not violate the rule against hearsay.  *See United States v. Perholtz*, 842 F.2d 343, 357 (D.C. Cir. 1988) ("[I]n this case, the government did not intend to show that any particular item contained in the script was true.  To the contrary, the purpose was to show that the information in the document was false; to wit, that Dillon knew little about the services supposedly rendered pursuant to various agreements he had made."); *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981) (footnote omitted) ("In our view, the prescriptions were not admitted to prove the truth of the assertions they contained, and are, therefore, not hearsay.  They were not offered to prove Dr. Bashien's or any of his patients' addresses.  Nor were they offered to prove the doctor believed that the patient needed the drug prescribed, which is an assertion probably intended by the doctor when he wrote the prescriptions.  They were offered in evidence to show they were used to obtain drugs."); *Franks v. State*, 724 S.W.2d 918, 919 (Tex. Ct. App. 1987) ("Appellant correctly asserts that since the prescriptions were offered in order to show their existence and not to prove the truth of any matters asserted therein, the admission of the prescriptions would not violate the hearsay rule."). We view these cases as instructive, although we note that the *Franks* court did not articulate the non-hearsay purpose for which the prescriptions could be offered; and the D.C. Circuit follows the majority rule that nothing is an assertion unless it is intended to be one, *see United States v. Long*, 905 F.2d 1572, 1579–80 (D.C. Cir. 1990).

[7] Young also argues that, even if the prescriptions were hearsay, they would still be admissible under the "statements made for the purposes of medical treatment" exception. Because we hold that it was possible for Young to introduce the prescriptions for a non-hearsay purpose, we need not reach this argument.

controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance."

The State characterizes the argument to admit the alleged prescriptions under § 5-602 as even weaker than the argument to admit them under § 5-601, because prescriptions are not mentioned in § 5-602. Instead, it asserts the prescriptions are "at most" a "factor" in the possession with intent to distribute analysis—along with several other factors. In other words, says the State, the mere fact of having a prescription does not mean that the individual is not also illegally distributing the drug, even if legally possessed.

Like the Court of Special Appeals, we can quickly dispatch with this argument. Young was charged with **possession** with intent to distribute, under § 5-602(2), not with distributing and dispensing a controlled substance, under § 5-602(1). Under § 5-602(2), an individual may not "**possess** a controlled dangerous substance in sufficient quantity" to indicate an intent to distribute. We interpret § 5-602's prefatory language—"Except as otherwise provided in [Title 5]"—to incorporate the possession defense of § 5-601(a)(1), which is also in the Criminal Law Article, Title 5. Thus, the same statutory defense available for possession charges under § 5-601 is available for possession with intent charges under § 5-602(2), and a prescription is admissible to establish the fact of its own existence as an element of that statutory defense.

Finally, we note that when evidence is offered for a limited purpose, such as a legally operative verbal act or circumstantial non-assertive evidence, a limiting instruction is likely appropriate. "If the proponent of a statement claims to offer the evidence for a purpose other than its truth, but also offers the statement to prove the truth of a matter

21

asserted therein, the court should either exclude the evidence or make clear that the evidence is admitted for a limited purpose." *Bernadyn*, 390 Md. at 15. Thus, depending on the reason proffered to admit the prescriptions, a limiting instruction is likely advisable.

### 3. Authentication—Guidance for Remand

Young was never given the opportunity to authenticate the alleged prescriptions because the trial judge—treating the prescriptions as hearsay—granted the State's motion *in limine*. This was error. The question then becomes what is the proper remedy in this case? During the off-the-record conference in chambers, defense counsel may have told the trial judge how he intended to introduce the prescriptions. Counsel may have further explained how he intended to prove that the prescriptions were from an authorized provider or that the provider was acting in the course of professional practice. Or maybe he said nothing at all. Absent a record of this conversation, however, we are unwilling to assume that Young admitted that he did not have any method to authenticate the prescriptions. He should have been given an opportunity to proffer his authentication method. For this reason, we affirm the Court of Special Appeals and remand the case for a new trial on the charges for which Young alleged he had a prescription.

Although the State failed to preserve the issue of authentication, it will surely do so on remand. For guidance, we offer the following. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Md. Rule 5-901(a). Testimony from the prescribing doctor is one way to authenticate (or rebut) an alleged prescription, but we wish to make clear that it is not the only way. As we explained

22

in *Sublet v. State*, "[t]he most straightforward approach to authenticating a writing is to ask an individual with personal knowledge about the document whether the matter was what it purported to be." 442 Md. 632, 658 (2015) (citing *Matthews v. J.B. Colt Co.*, 145 Md. 667, 672 (1924) (testimony of witness that he saw defendant sign contract was sufficient to warrant its admission)). There are potentially various people with "personal knowledge" about the prescription, depending on the specific reason it is introduced. "Familiarity with the purported author's signature also has been a basis for authentication, provided that such familiarity was proven prior to authentication." *Id.* (citing *Smith v. Walton,* 8 Gill 77, 77 (Md. 1849) ("A witness who has seen a party write, or who has corresponded with him, is qualified to speak with respect to the genuineness of his signature.")).

"In other circumstances, comparison to a known exemplar may be accomplished through expert testimony or within the confines of the jury room." *Id.* at 658–59 (citing *Hoover v. Hoover,* 187 Md. 646, 650 (1947) ("A bank official, whose business it was to know handwriting, testified as an expert that in his opinion the writing on the disputed note, and the admitted writing of [the alleged author] on the autographed note, were the same."); *Haile v. Dinnis,* 184 Md. 144, 153–54 (1944) (jury permitted to compare records against previously admitted exemplars to determine if they were authentic)). "In the absence of known exemplars, authentication of a writing also could be obtained were the contents or subject matter of the writing to 'contain circumstantial evidence indicating the identity of its author' by, for example, containing information known only to a chosen few." *Id.* (citing 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 901.04[3][a] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 2015)).

These are the principles that should guide a court facing a defendant's proffer of a prescription as a statutory defense according to CR § 5-601(a). The defendant, in such instance, must make some *prima facie* showing that he received the alleged prescriptions from a physician who prescribed them in the ordinary course of business. It is conceivable that the defendant could do so via his own testimony. Pertinent testimony from the prescribing physician or the physician's custodian of records would obviously suffice. Absent some valid authentication, the prescriptions are inadmissible on remand.

## CONCLUSION

We hold that the issue of whether Young's alleged prescriptions were properly authenticated was not raised in or decided by the trial court, and thus it is not preserved for review. Next, under the facts of this case, the trial judge had sufficient notice that Young intended to introduce the prescriptions into evidence, and the judge's ruling was intended to be the "final word on the matter." Accordingly, Young had no opportunity to object and we treat the issue as preserved under Md. Rule 4-323(c). Finally, we hold that evidence of a valid prescription can fall under the category of "verbal acts"—admissible, not for the truth of the matter asserted, but as the basis of a statutory defense under CR §§ 5-601(a) and 602(2).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

24